## JACOB L. GRAFT v. PETER S. LOUCKS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF WESTMORELAND COUNTY.

Argued October 9, 1890—Decided January 5, 1891.
[To be reported.]

(*a*) It was found, on bill filed for specific performance, that the terms of a parol contract for the sale of land were established by clear, precise, and indubitable testimony; that it had been so far executed that the purchase money was paid, possession passed, and a deed delivered to the vendee which, for a temporary purpose, was handed back to the vendor, who thereafter wrongfully kept it:

1. Under these circumstances, all the requirements of the law were complied with; and, notwithstanding the taxes had been assessed to and paid by the vendor with the vendee's assent, and that the vendor had married and the land had risen in value before the bill to enforce the contract was filed, the vendee was entitled to have from the vendor as perfect a deed as the latter could give him.

2. In such case, the handing back of the deed to the vendor having been in April 1, 1873, and the vendee, after repeated unsuccessful efforts in 1874 and 1875 to get his deed again, having filed his bill in March, 1876, there was no merit in an allegation of laches in such filing; and, though there was great delay in the subsequent proceedings, the plaintiff could not be charged therewith when its causes did not appear.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 92 October Term 1890, Sup. Ct.; court below, No. 67 Equity Docket, C. P.

On March 21, 1876, Jacob L. Graft filed a bill in equity against Peter S. Loucks, praying for a decree directing the specific performance of an alleged parol agreement of the defendant to sell and convey to the plaintiff a certain lot of ground in Scottdale, Westmoreland county, containing one fourth of an acre. On April 27, 1881, in obedience to a rule to plead, answer or demur, the defendant filed his answer to the bill, and on May 2, 1881, the plaintiff joined issue.

On October 16, 1882, the cause was referred by the court to *Mr. John B. Head* as examiner and master, who on November 10, 1884, filed his report, finding, in substance:

Opinion of Court below.

(1) That in the fall of 1872 a contract was entered into between the plaintiff and the defendant for the purchase and sale of the lot of ground described in the bill, for the consideration of $150; but that (2), upon the question whether said purchase money had been paid, the testimony was too evenly balanced to enable a chancellor to be clearly satisfied of the fact of such payment; and (3) that evidence of such exclusive, notorious and continuous possession of the land by the vendee, as the law was willing to accept as a partial substitute for a written contract or conveyance, was wholly wanting. The master accordingly recommended that the bill be dismissed at the cost of the plaintiff.

The testimony before the master is sufficiently stated in the opinion of the Supreme Court, and in the opinion of the court below upon exceptions to the report, WHITE, P. J., 40th district, specially presiding, in part as follows:

A careful scrutiny of all the testimony leads us to the same conclusion as the master, as to the contract, but to a different one as to the possession and the payment of the purchase money. We may now proceed to recall the testimony supporting our conclusion. The master has said, that there was a contract is not disputed. By reference to the defendant's answer and testimony, it will be observed he denies, quite emphatically, that there ever was a specific contract of sale, averring that propositions of sale only were made, which were never accepted by the plaintiff. While agreeing with the master that a contract was made, we find the testimony of actual payment and possession, under the contract, quite as clear and satisfactory as that which establishes the contract.

The plaintiff, himself, testifies substantially that the agreement was made on the ground in August, 1872, for $150, the money to be paid when the deed was delivered. The boundaries were then shown. They met again on the lot in April, 1873, when the defendant showed him where to put the fences and measured the boundaries with a tape line; George Graft, Isaac and George Taylor being present. It appears further, that the plaintiff before this had a contract with the defendant and his brother Jacob S. Loucks, for making about 400,000 bricks, which had not been settled for before the lot purchase.

There was a settlement for these bricks at the defendant's house, in April, 1873, other parties being present. There is no doubt that at this settlement there was more money in the defendant's hands, owing the plaintiff, than would pay for the lot, and it is equally clear it is in his hands yet. The plaintiff had also bought another lot from Jacob S. Loucks, the brother and partner of defendant in brick contracts, for $125. The plaintiff further testifies, that the purchase money for both these lots was deducted at the settlement out of what was coming to him, and the deed from Jacob S. Loucks then and there delivered, for the other lot, and that the defendant had there a deed for the lot in suit, executed by himself, his sister and mother, for the consideration of $150, which he delivered then to the plaintiff. The plaintiff, finding some fault with the description, in that it did not take it to the centre of the road running by, handed it back to the defendant, stating his complaint, when the defendant took it and agreed to make it right and re-deliver it the following Saturday evening. The deed has never yet been brought back to the plaintiff or another delivered in its place, although the plaintiff states that he notified the defendant some months after, he wanted and was willing to take the deed so offered. The plaintiff further testifies that he fenced and has been in possession of the lot ever since it was marked off to him by the defendant and the settlement of 1873. It appears, further, that about March 9, 1874, the defendant sent the plaintiff a check for $165.99, the balance he admitted he owed him, but the plaintiff returned it, stating he desired to have a personal settlement. The defendant has this money yet. If the story of the plaintiff is correct, he not only bought the lot, but took possession, fenced and paid for it. He has offered some testimony by way of corroboration. . . . . It would thus appear that the plaintiff has not only shown he bought the lot, but has also produced some corroborating testimony to support his position that he fenced and has had possession since 1873, and that the defendant had in his hands, during this time, $165.99, being $15 more than the purchase money; the plaintiff testifying and being supported in it by two other witnesses and some circumstances that it was retained on the purchase money of the lot.

The defendant testifies at length in denial. His statements

are not entirely clear, consistent and satisfactory. He says that there were some negotiations with the plaintiff for this sale in 1872, when $150 was asked, one third cash, one third in three months, one third in six months, with interest, deed to be delivered when all was paid, and the plaintiff said he would take it; that nothing more was said until March or April, 1873, when the plaintiff came and asked about the lot, and defendant told him it was now worth more money. Then there was talk of a street through it, taking twenty feet off of it; he then proposed to the plaintiff if this was satisfactory he would still let him have it. He states the plaintiff objected to this, but some time after, defendant finding he could get the street through below, concluded to make the title to the plaintiff, "as he had first bought," and ordered the deed to be made out accordingly; that the plaintiff asked several times for the deed; finally, the deed was made out and plaintiff notified, when he came with Isaac Taylor, who had also bought a lot, examined and compared deeds, made no objection and told defendant to have them acknowledged. The deeds were then acknowledged, when the plaintiff and Taylor went on and put up their fences. The matter remained in this way for a couple of months, when the settlement occurred about the brick making. The deed being produced, the plaintiff objected to the description not having land enough; that it should extend to the middle of the road. It would appear there was no difference about the boundaries otherwise of the lot, the plaintiff only wanting the description so that it would extend to the middle of the road. The defendant further states that the plaintiff had the fences up around three sides of the lot; that the deed was executed by the defendant, his sister as co-tenant, and his mother.

It would thus appear, from the defendant's testimony, that all interested in the title had formally ratified the sale. At the time the deed was tendered, it does not appear the defendant demanded any money from the plaintiff. The defendant denies that he agreed to make the description in the deed right. The matter so remained, defendant says, till, about May, 1874, the plaintiff demanded the deed that had been tendered, when the defendant said, "we would leave it stand as it stood." The defendant states that he took the front fence off and forbid persons cultivating the lot for the plaintiff. He also states he

had offered the deed to the plaintiff three or four times.   He
denies, however, that he deducted the $150 purchase money
from plaintiff's brick bill, but has the $165 for the plaintiff since
March, 1874.   Jacob S. Loucks has been called by defendant to
qualify somewhat his testimony for the plaintiff, wherein he said,
" I think the boundaries given are correct," that he referred to
the boundaries in the deed tendered the plaintiff; and further
states that he had no actual knowledge of the $150 purchase
money being deducted from the brick bill; but, as his brother,
the defendant, paid the bills, and $125 paid for the lot sold by
the witness to the plaintiff was paid out of the brick at that
settlement when the deed was delivered, he concluded the $150
for the lot in controversy was also paid in the same way.

It is further shown by the defendant, the lot was continued
to be assessed to him, and he paid the taxes.   This circum-
stance must be considered with the other evidence in the case.
It is well known, payment of taxes alone will not give title,
nor will it create an ouster of the person in actual possession,
although it may show a claim : Quin v. Brady, 8 W. & S. 140.
Like any other voluntary payment of another's debts, it gives no
rights and advantages against the owner who may be in actual
possession : Sorber v. Willing, 10 W. 142; Murphy v. Springer,
1 Gr. 74.   The contention of the plaintiff, in this behalf, is, that
he allowed the assessment to remain in that way because he
did not have his deed.

The refusal of the deed, by the plaintiff, when tendered him,
is invoked against him.   While the deed was refused, yet its
execution and tender by the defendant must be considered as
a pregnant fact in affirmance of the contract.   In McGibbeny
v. Burmaster, 53 Pa. 335, approved in Milliken v. Dravo, 67
Pa. 233, Allison v. Burns, 107 Pa. 54, and other cases, a deed,
having been written by direction of the vendor, though not ex-
ecuted, was rightly regarded as plainly evidencing the terms of
the contract.   So, also, in Hart v. Carroll, 85 Pa. 512, a deed,
signed and executed by the vendor, though never delivered, was
regarded as of great significance, Justice WOODWARD saying :
" Not having been delivered, it conferred no title, and having
been retained exclusively in the vendor's hands, it could not
serve the purpose of averting the operation of the statute.   But
its execution was a fact bearing upon the question of the exist-

ence of the contract. It was a deliberate admission that the land had been sold, and an explicit declaration of the terms of the sale, of the quantity and boundaries of the land, and of the amount of the purchase money." In the case before us, the deed had been actually delivered; and, while probably the handing back and acceptance by the grantor might destroy the efficacy, under the circumstances, of a formal delivery, yet we cannot fail to consider the only reason given for the return of the deed. It was refused only because it was claimed the description did not carry title to the middle of the road running by the lot. If this was a public road, probably that would have been the effect of the conveyance of the lot described as it was. But it is in evidence that the defendant took the deed again and agreed to make it satisfactory and return it the next Saturday. While he denies he so agreed, yet the important fact remains that a deed, defining the boundaries, naming the consideration, containing all the formalities of a conveyance, was actually executed by the defendant and his co-tenants, tendered and actually given to the plaintiff, no money being demanded in return, although the deed was to be delivered only on payment of all the purchase money. This is most significant. In a few months after this, the plaintiff agreed to take and requested the re-delivery of the same deed. This was refused, although the convincing weight of the evidence shows the defendant had the amount of purchase money still in his hands, the plaintiff had possession, and had fenced the lot. The appearances strengthened the suspicion, at least, that the advancing value of the lot prompted withholding the deed, rather than the absence of a specific contract or a failure to pay the purchase money.

After this careful review of all the testimony, we are led to the conclusion, that its clear weight establishes a contract of purchase and sale, a delivery of possession under the contract, and the payment of the purchase money. We think the contract has been adequately proven, and it has been so far executed as to be sustainable without doing any violence to the latest utterances upon the statute of frauds and perjuries. We have said the rule is, the contract must be shown by full, complete, and indubitable proof. By indubitable, we understand, as said in Hart v. Carroll, supra, in the very nature of things

the conclusive and absolute proof which results from the production of record evidence, or rests on the solution of a mathematical problem, can never be the effect of the verbal testimony of human witnesses. The language of the authorities is to be taken and treated in its connection with and its relation to the subject and instrumentalities to which it has been applied. Of course, the evidence must be clear, precise and indubitable; not indubitable in the sense that there must be no opposing testimony, but in the sense that it must carry a clear conviction of its truth, as was said in Hartley's App., 103 Pa. 23. Tested by this standard, the evidence to sustain the plaintiff's bill, while opposed by the defendant, clearly establishes there was a contract; satisfactorily shows, also, that possession was taken under it, and that the defendant has in his hands the purchase money, retained as such. We have no doubt in this conclusion; that is, no such doubt as the rules of evidence, about such cases, regard and require the chancellor to withhold his hand from decreeing specific performance. We will, therefore, direct the defendant to convey to the plaintiff such title as he may have to the lot in question, by proper decree.

Before formulating this decree, however, we may notice another objection raised against the relief sought. It is objected that the bill of the plaintiff prays for a conveyance in fee-simple of the entire interest and estate in the lot, and that the evidence develops that the defendant owns only the undivided one half of a fee-simple estate therein, his sister and co-tenant owning the other undivided half, and therefore there can be no relief. We may remark, the evidence developed that the co-tenant ratified the sale made by the defendant by joining in the execution of the deed. Any decree we may make here will not affect such co-tenant, because she is not a party to this bill, but it does not follow, therefore, that no relief can be had at all against the defendant. The plaintiff cannot be turned out of court by reason of inappropriate terms used in his bill: Danzeisen's App., 73 Pa. 65. In a case not dissimilar to the one in hand, this court as at present constituted, sitting in another jurisdiction, met a kindred question. In Schuey v. Schaeffer, 130 Pa. 16, affirmed by the Supreme Court, we said: " It is true, our equity practice is controlled by particular rules, as well as that of our law courts. While we would not relax,

unnecessarily, these rules, it was well said by C. J. LOWRIE, in Troxal v. Iron Company: 'We must not make precision of practice of more value than justice,' and courts have often said so. We have just happened on a case where Lord MANSFIELD declares his disapprobation of 'objections' which have no relation to the merits of a cause: Ross v. Johnson, 5 Burr. 2827; and the Romans had a standing maxim in their law that legal forms yield to the evident equity." The jurisdiction of the court having attached by the presentation of this bill, it has control of the subject: Postlethwaite's App., 68 Pa. 477. We can make such decree as may relate to the justice of the case and can be enforced.

In Story's Eq., § 779, approvingly quoted in Burk's App., 75 Pa. 145, we find suits may be brought by the purchaser for a specific performance under similar circumstances, where the vendor is incapable of making a complete title to all the property sold. In such cases, it would be unjust to allow the vendor to take advantage of his own wrong, and courts of equity will allow the purchaser an election to proceed with the purchase pro tanto, or abandon it altogether. Similar doctrine was uttered in Harrigan v. McAleese, 1 Mona. 450. On a bill for a specific performance of a contract for the sale of land, praying for a good and sufficient deed, defendant's wife refused to join. Plaintiff, on the argument before the master, agreed to accept the deed from the husband alone: a decree could be entered granting so much of the prayer of the bill. On the argument, in the case before us, the plaintiff was willing to have a decree for specific performance by the defendant, so far as his own interest in the property is concerned. Such decree we can properly make. It must be observed, all the purchase money is found to have been paid, and the plaintiff is in possession. Should other interests seek to disturb him, it may then be a question whether the act of the defendant, in making the sale and receiving the purchase money, has been ratified by uniting with him in executing the deed tendered to the plaintiff in 1873, so as to estop further complaint. That question may be met should it ever arise. Regarding, then, the purchase money as having been fully paid, and the plaintiff as willing to accept here a decree for the conveyance of such title as the defendant may have in the premises, we will direct such decree to be made and proceed to formulate it.

—A decree having been entered in accordance with the foregoing opinion, the defendant took this appeal, specifying that the court erred:

1. In not dismissing the bill as recommended by the master.
2. In not confirming the master's report.
3. In making the final decree.
4. In directing the defendant to pay the costs.

*Mr. W. H. Klingensmith,* for the appellant:

1. The first suggestion is, that the plaintiff has been guilty of such laches as to preclude the granting of the relief prayed for. Great delay in filing a bill for specific performance, or in prosecuting the suit, after bill filed, will amount to an abandonment of the contract and forbid the interference of a court of equity: Waterman on Spec. Perf., 659; Remington v. Kelly, 7 Ohio 432; Higby v. Whitaker, 8 Ohio 198; Buckmaster v. Grundy, 3 Gilm. 626; Marston v. Humphrey, 24 Me. 513; Shortall v. Mitchell, 57 Ill. 161. Gross laches will be a bar, especially when circumstances have altered in the meantime: Callen v. Ferguson, 29 Pa. 247; Miller v. Henlan, 51 Pa. 265; DuBois v. Baum, 46 Pa. 537; Patterson v. Martz, 8 W. 374. The conduct of the plaintiff was such as to justify the defendant in supposing the contract abandoned, and if so, the plaintiff cannot succeed: Zeigler v. Houtz, 1 W. & S. 533; Washabaugh v. Stauffer, 81* Pa. 497.

2. Important changes have taken place with respect to the situation of the parties, and such changes are a bar: Ruff's App., 117 Pa. 310. One of these is that the defendant has married. His wife may and probably will refuse to join in a conveyance to the plaintiff. When such is the case, specific performance will not be decreed, and the vendee must sue at law: Clark v. Seirer, 7 W. 107; Riesz's App., 73 Pa. 485; Burk's App., 75 Pa. 141; Hanna v. Phillips, 1 Gr. 253; Weller v. Weyand, 2 Gr. 103. The value of the land has risen greatly, and it is now probably worth $1,000. If the plaintiff has lost nothing, equity will not afford him relief: Miller v. Henlan, 51 Pa. 265. He has lost nothing. The money that was due him on the brick has been held for him. He has made no expenditures except to erect some rough fences, and they are not such improvements as will take the case out of the

statute of frauds : Wack v. Sorber, 2 Wh. 387 ; McKowen v. McDonald, 43 Pa. 444.

3. Every parol contract for land is within the statute of frauds, except when there has been such part performance as cannot be compensated in damages: McKowen v. McDonald, supra ; Postlethwait v. Frease, 31 Pa. 472. Nothing has been shown in this case, incapable of compensation in damages. Nor has such possession as is requisite been shown. The answer is responsive to the bill, and the plaintiff must make out his case by testimony of two disinterested witnesses: Campbell v. Patterson, 95 Pa. 447. This has not been done. It requires much less on the part of the defendant to resist a bill for the performance of a contract, than it does for the plaintiff to maintain such a bill: 2 Story Eq. J., 78, 79 ; Dalzell v. Crawford, 1 Pars. 37. The plaintiff must make out such a case that the conscience of a chancellor can rest only on granting the relief prayed for : Elbert v. O'Neil, 102 Pa. 302. And even when all the requirements of the law have been complied with, the decree is of grace ; Elbert v. O'Neil, supra ; Washabaugh v. Stauffer, 81* Pa. 497 ; Freetly v. Barnhart, 51 Pa. 279 ; Pennock v. Freeman, 1 W. 401 ; Rennyson v. Rozell, 106 Pa. 407.

*Mr. Will S. Byers* (with him *Mr. Alexander Eicher*), for the appellee :

Counsel cited : (1) As to the part performance which is sufficient to take a parol contract out of the statute of frauds : Haslet v. Haslet, 6 W. 464 ; Jamison v. Dimock, 95 Pa. 52 ; Bassler v. Niesly, 2 S. & R. 352 ; Stewart v. Stewart, 3 W. 255 ; Billington v. Welsh, 5 Binn. 129. (2) As to the effect of the deed made, as a ratification under seal by the other persons, interested in the land, of the defendant's authority to make the sale : Grove v. Hodges, 55 Pa. 517 ; Hart v. Carroll, 85 Pa. 512 ; Bellas v. Hays, 5 S. & R. 427.

OPINION, MR. JUSTICE GREEN :

It is scarcely necessary to add anything to the careful and exhaustive opinion of the learned judge of the court below. He has reviewed all the points of contention, and has discussed fully and justly the entire substance of the testimony.

Opinion of the Court.

The case differs materially from the ordinary run of cases in which parol contracts for the sale of real estate are sought to be enforced. That there was such a contract in this case, with the land fully described, its boundaries designated, the precise amount of the consideration fixed, possession actually delivered by the vendor and taken by the vendee, is an indubitable fact perfectly established by the testimony of all the witnesses, including the defendant, who testified on this subject. But the case went further than that. A deed for the premises sold was actually prepared at the instance of the vendor, was signed by all the parties interested in the land, was acknowledged before a magistrate, and was fully sealed and delivered to the vendee. What had before been only a parol contract thereby became, not only a written contract for the sale of the land, but an actually executed and completed deed of conveyance operative to pass the title of the vendors to the vendee. What subsequently happened is not a matter of any serious dispute on the testimony. After receiving the deed from the defendant, the plaintiff, upon examining it, complained that it did not give him all the land he was entitled to, and he says he handed it back to the defendant, who agreed to have it made right, and to hold it for that purpose until the following Saturday evening.

George Graft, a witness for the plaintiff, who was present at the delivery of the deed, says there were two deeds delivered, one from J. S. Loucks for $125, and one from P. S. Loucks for $150; that they were both presented at the same time, and then adds, " Graft kept deed of J. S. Loucks, but handed the other back; some talk of the deed not calling for the amount of land purchased; don't know what Peter said; he took the deed, and I think was to make it satisfactory; think Peter was to have it next Saturday." Jacob S. Loucks, another witness for the plaintiff, and a brother of the defendant, testified that there were two lots sold, one by him for $125, and one by his brother for $150; that he was present when both deeds were delivered; that the purchase money of both lots was deducted from the amount owing to the plaintiff; and then, as to the deed from Peter, said: " Graft did not keep this deed; handed it back to Peter; claimed deed did not call for lines as they had been located; did not give amount of ground;

don't know what Peter said." The defendant admits making the contract, and that the price was to be $150, and adds, " I thought I would make him a title as he had first bought: I ordered Shipley to write the deed; Mr. G. (plaintiff) knew nothing of this, and asked several times for deed; I said I had ordered it, but not received it; when I got it I notified him; he and Isaac Taylor came to my house, examined deeds, compared them, and made no objection; told me to have them acknowledged; we did so; then they went and put up fences. That is all I knew for a month or two, when he came to settle for work done; he then raised objection to deed, and refused to accept it; said he had not one fourth acre; he said if we would make deed to. middle of street he would accept it; I offered him the deed at time of settlement; mother, sister, and I had signed the deed. . . . . When I was on the ground nothing was said; this was before tender of deed, but after he had examined it; he put up fence before he made any objection to deed." He also said on cross-examination, " I did not deliver the deed to Graft; I offered it, he would not take it."' But the great preponderance of the testimony was that the deed was delivered to Graft, who, after that handed it back to the defendant, not to keep, but to have it corrected. The plaintiff also said that he demanded the deed again from the defendant a number of times, but that he refused to return it. This is not contradicted by the defendant. The plaintiff further testified that he told Loucks he would take the deed as it was, as he wanted no trouble, and added, " I am still willing to take it." We are clearly of opinion that the deed was actually executed and delivered, and only returned to the defendant for a temporary purpose, which he never fulfilled, but determined to keep the deed permanently, and finally destroyed it, because the value of the land had largely increased. Of course the destruction of the deed by the defendant was a mere act of spoliation, which can give him no advantage.

On the question of the payment of the purchase money, the testimony is equally clear. The plaintiff had been working for the defendant and his brother, burning for them a large quantity of bricks. The brother testifies that the purchase money for both lots sold to the plaintiff was taken out of the money they owed him. There was no doubt as to how this was in re-

gard to the lot he sold, as he testifies to it himself; nor can we doubt that it was also the fact in regard to this lot. The plaintiff, and George Graft, and J. S. Loucks all testify to it, and the defendant alone contradicts it. But even he admits that he owed the plaintiff $165.99 on the settlement that was made in April, 1873, when the deed was tendered or delivered, less interest from that time till March 7, 1874, at which time he offered that sum to plaintiff, who refused to take it. The defendant further admits that he still owes this money to the plaintiff. In view of all this testimony, it is clear that the purchase money was to be paid by appropriating $150 of this money to the payment of the consideration of the deed, and that it was so agreed at the time. There is no doubt under the testimony that the plaintiff took actual possession of the lot very soon after the parol contract was made, with the full knowledge and consent of the defendant, and that he made fences around the lot which have been maintained. The defendant says he tore away the front fence, once, but admits that Graft replaced it. There was also some evidence of cultivation by Graft. Defendant testifies as follows: "The fences he made enclosed the ground I tendered deed for; he has never been in possession of any ground except that described in the deed." George Graft testifies, "Plaintiff has been in possession ever since fence was put on the lines as pointed out."

It thus appears that the terms of the original contract are established by clear, precise, and indubitable testimony; that the contract was so far executed as that the vendor and others interested in the title, executed, acknowledged, and delivered a deed for the property to the vendee, which was subsequently handed back to the vendor for a temporary purpose, which the vendor has not fulfilled, but has kept the deed permanently and wrongfully; that the whole of the purchase money was paid at the time the deed was tendered and delivered, and yet remains in the possession of the vendor; and, further, that possession of the premises was delivered by the vendor to the vendee, who has ever since retained it. In these circumstances, we have no hesitancy in saying that all the requirements of the law have been complied with, and that the plaintiff is now entitled to have from the defendant as perfect a deed as the defendant can give him. There is no merit in the allegation of laches. After repeated

unsuccessful efforts of the plaintiff to get back his deed during 1874 and 1875, he filed the present bill in March, 1876. The causes for the delay in the subsequent proceedings we do not know, and we are therefore not at liberty to charge them upon the plaintiff. The assessment and payment of taxes gives no title, and takes away none.

> The decree of the court below is affirmed, and the appeal is dismissed at the cost of the appellant.

