[Rovelsky v. Scheuer.]

# Rovelsky *v.* Scheuer.

*Bill in Equity for Specific Performance of Contract for Sale of Land.*

1. *Specific performance of contract of sale; parol authority to agent.*—Where, under parol authorization, an agent makes a sale of land, and there is payment of the purchase money and a surrender of the possession to the purchaser, the transaction is taken without the influence of the statute of frauds, and there is a contract of sale, which can be specifically enforced in a court of equity.

2. *Same; same; case at bar.*—Where on a bill filed for the specific performance of a contract for the sale of land, it is shown that the defendant, who was indebted to complainants, executed a mortgage on the land in controversy to secure the payment of the indebtedness, and requested them to withhold the mortgage from record until her general agent's return, when she would pay the debt or sell the property to them, that upon the return of the agent, he, under parol direction from defendant, executed a deed of conveyance to the complainants, who paid the purchase money in great part by satisfaction of the debt to them and cancellation of the mortgage, and for the rest of the purchase money gave checks drawn in favor of defendant, which were collected and used in her business by her general agent, that the complainants were put in possession immediately upon the execution of the conveyance, and said agent, for the purpose of carrying on defendant's business thereon, leased the premises from them and paid them the rent, with the knowledge of his principal, the defendant, who did not dissent from the sale till long afterwards,—there is established a valid contract of sale, and the complainants are entitled to have it specifically enforced.

APPEAL from the Chancery Court of Dale.

Heard before the Hon. JERE N. WILLIAMS.

The facts of the case are sufficiently stated in the opinion.

H. H. BLACKMAN and FARNHAM, CRUM & WEIL, for appellants.—1. In cases of this kind, above all others, a much stronger case is required to maintain the suit, than to defeat it. The proof must, in every essential particular, correspond with the contract stated in the bill, be clear and satisfactory, the contract reasonable and

[Rovelsky v. Scheuer.]

just, before a court of equity will be authorized to decree specific performance; and in no case, will a court decree specific performance of a void contract. *Johnston v. Jones*, 85 Ala. 286; *Allen v. Young*, 88 Ala. 338; *Nelson v. Shelby Manfg. Co.*, 96 Ala. 528; *Phillips v. Adams*, 70 Ala. 373; *Alba v. Strong*, 94 Ala. 163; *Bogan v. Daughdrill*, 51 Ala. 312.

2. No such payment of purchase money, and open notorious change of possession, at the time of the alleged agreement to convey, or at any other time, has been shown in this case, as will, in any manner, satisfy the statute of frauds.—*Trammell v. Craddock*, 93 Ala. 452; 8 Amer. & Eng. Encyc. of Law, 744.

2. Unless possession was given by authority from Mrs. Rovelsky and the purchase money paid to her or to her authorized agent, the contract must be considered absolutely void, and a void contract cannot be ratified. *Swann v. Miller*, 82 Ala. 530.

S. H. DENT, JR., *contra.*—The authority of the agent being given before hand and ratified afterwards, respondent, D. Rovelsky, is now estopped in a court of equity to deny said authority.—*Franklin v. Pollard Mill Co.*, 88 Ala. 318; *Ala. Gt. Sou. R. R. Co. v. S. & N. R. R. Co.*, 84 Ala. 570. The contract having been made, the purchase money paid and the purchaser put in possession the case comes directly within the exception of the statute and is enforceable.—Code of 1886, § 1732, sub-div. 5. The agent being in charge of the principal's mercantile business, in the management of which the principal took no active part, the agent had implied authority to rent the storehouse for the purpose of carrying it on.—*Rhodes Furniture Co. v. Weedon & Dent*, 108 Ala. 252, and authorities there cited. Besides the principal having subsequently been informed of the rent contract, ratified the same at least by acquiescence. The relationship of landlord and tenant, a relationship which respondent Rovelsky cannot deny, was thus established and the possession of the tenant was the possession of the landlord. An instrument intended as a conveyance of land but wanting in some essential element as a conveyance will be treated by a court of equity as an agreement to convey.—*Goodlett v. Hansell*, 66 Ala. 151; *Roney v. Moss*, 74 Ala. 390; *Hollis v. Harris*, 96 Ala. 288.

McCLELLAN, J.—This bill is exhibited by B. Scheuer & Brother and Rachel Schloss against Dora Rovelsky *et al.*, for the specific performance of a parol contract to convey land alleged to have been made by the said Dora. The case made by the bill is this : The said Dora owned the land in controversy and was indebted to B. Scheuer & Bro. in the sum of $861, and to Rachel Schloss in the sum of $1,861. She was engaged in a mercantile business at Ozark which was carried on, managed and controlled by Max Rovelsky in her name, and in respect of it he was her general agent. The debt of B. Scheuer & Bro. and $774 of the debt of Rachel Schloss was contracted by said Max for Dora in this business. $1,087 of Rachel's debt was for money borrowed by Max in the name of Dora, and used by him in paying the purchase money for a house and lot which he bought for her and at her direction at an execution sale. For this latter sum he executed a mortgage in Dora's name on said property to Rachel Schloss. This was on March 19, 1890. On or about December 20, 1890, the said Dora in person executed a mortgage, covering the property here involved, to the complainants to secure the payment of said several sums, amounting in the aggregate to about $2,722. At the time of this transaction, the said Dora asked or told complainants not to have the mortgage recorded, giving as a reason for the request or direction that Max Rovelsky was then in New York "and that as soon as he returned, she would settle the entire indebtedness" to the complainants, "by selling them the real estate described in the mortgage in discharge of the same, the papers to be fixed by Max Rovelsky as soon as he returned." On or about March 16th, following, said Max, acting, the bill alleges, for the said Dora, and in accordance with her proposition of December 20th to sell to complainants, came to them and offered to sell said land in satisfaction of said indebtedness, and thereupon it was agreed by and between complainants and Max, acting for Dora, that the land should be sold and conveyed by the latter to complainants for the sum of $3,000, the indebtedness to be cancelled and receipted for, and the balance, about $300, to be paid in cash. This agreement was carried out by complainants, who cancelled and surrendered the evidence of their debts and the mortgages before referred to,

and paid the balance of the purchase price to Max or Dora by checks payable to the latter. Max Rovelsky at the same time executed to complainants a deed to the land in the name of said Dora, and in his own and his wife's name. And thereupon the said Max as the agent of Dora rented the property thus conveyed from the complainants for the ensuing year at the rate of forty dollars per month, executed to them notes for the rent of each month in the name of Dora, continued in possession of the property as the agent, and carried on the business, of said Dora on and in the property, and for several months paid said rent notes with her funds and as her agent. All this was done—the conveyance made, the possession constructively given under it, the property rented from complainants, the rent notes executed and paid, &c., &c.—the bill avers with the knowledge and consent, and by the parol direction and authority of the said Dora. Afterwards, she attempted to repudiate the contract to convey, and Max's authority in the premises &c., &c.; and now insists that she had no knowledge of any of the transactions alleged in the bill. Such is the case made by the bill; and upon it, we think the complainants are entitled to the relief prayed, if they have sustained their averments by the evidence. The facts alleged, in other words, show a sale by an agent under parol authorization, payment of the purchase money, and a surrender of the possession to the purchasers. These facts, if proved, take the case out of the influence of the statute of frauds, and make a case of contract of sale specifically enforceable in a court of chancery. The demurrers to the bill were, therefore, properly overruled.—*Franklin v. Pollard Mill Co.*, 88 Ala. 318, and cases there cited.

A very careful examination and consideration of the evidence leads us to the conclusion that the material averments of the bill have been proved with the requisite degree of certainty. That the property was conveyed to complainants in the name of Dora Rovelsky by Max Rovelsky, who was her general agent as to the mercantile business, and who in fact transacted all her business for her, that he rented it from them in her name and continued to use it in carrying on her business, and that he paid the rent for several months in her name and with her money, are each and all fully proven

[Rovelsky v. Scheuer.]

facts in the case.  It is likewise established beyond serious controversy that the purchasers at that sale paid the purchase money in great part by the satisfaction of just debts they held against Dora Rovelsky, and for the rest by checks drawn in her favor and which passed through and were paid into her mercantile business. Really, the only issue in the case is whether she authorized or ratified the acts of Max Rovelsky in the sale of this land to complainants.  The evidence fairly preponderates and is satisfactory to show that she executed the mortgage of December, 1890, as averred in the bill, that, this being done in the absence of her man of business, she regarded it as only a temporary arrangement to obtain until Max should recover from his illness and return from New York, that she then had it in mind to pay the debts due complainants when Max should return, either in money or by a sale of this property to them, and that, in part because of such purpose, she requested the mortgage to be withheld from record until her agent should return, and it could be determined whether and how the debts should be paid and the mortgage satisfied.  Having this object in her mind, it is not hard to believe, but, to the contrary, altogether reasonable and probable, that on the return of Max Rovelsky she took steps to execute it, and, finding she did not have the money with which to pay these debts—a fact inferable from subsequent developments—she took the alternative course of authorizing Max to convey the property to complainants in payment of the debts, receiving the value thereof in excess of the debts in money.  This probability of such authorization is strengthened by her own admission that she knew of the sale soon after it was made and the absence of any believable testimony that she ever dissented until long afterwards, and then because of complainants' refusal to give bail for her son Max ; by the contrary fact that she expressed her satisfaction that the sale had been consummated, and by the fact that she knew of the lease of the property from complainants and the contract to pay them, and the payment of, rent—knowledge necessarily resulting from her knowledge of the sale and her continued occupation, and which is also shown by the testimony of disinterested witnesses—and made no objection thereto, and also by the fact that she swore on the *habeas corpus* pro-

ceedings in effect that this property did not belong to her. And thus reaching the conclusion that she authorized Rovelsky in parol to sell and convey the property, there being no serious question, as we have seen, as to the other material averments of the bill, we concur with the chancellor that complainants are entitled to relief, and his decree granting the relief prayed is affirmed.

Affirmed.