JACOB L. KRAH

*v.*

JOHN WASSMER et al.

[Decided November 11th, 1908.]

1. A contract to convey lands can be specifically enforced, though it is signed by the vendor only, where the purchaser has paid all the price to be paid in cash, and has entered into possession.

2. A unilateral contract to convey land ceases to be unilateral on the purchaser filing a bill for specific performance thereof.

3. On a bill for specific performance, defendant cannot admit that there was a contract, and then set out a materially 'different contract from the one alleged in the bill, making the one so set out binding upon complainant, though the parties are bound by the statements in the answer in so far as they are admissions, or admissions without substantial variation from the bill; and, where defendant admits a substituted contract, complainant can have specific performance thereof, if he chooses to perform it on his part.

4. A bill to specifically enforce an oral contract to convey land will be dismissed, where the terms of the contract are uncertain.

5. Pure mistake of fact will sometimes defeat specific performance.

6. One cannot defeat specific performance of a contract because of the omission of terms therefrom resulting from his own negligence.

7. That the purchaser has completed his part of a contract for conveyance of land, and gone into possession, entitles him to specific performance, whether it be under an oral or written contract.

8. If the purchaser under a contract to convey lands, suing for specific performance, is compelled to stand upon an oral contract, he can refer to a receipt for part of the purchase-money to show the terms of the contract.

9. Complainant, having bargained for land understanding that he was to receive title free of encumbrances, can insist upon a conveyance free of restrictive covenants.

10. Evidence *held* to entitle the purchaser, under a contract to convey land, to specific performance.

11. One taking a decree of specific performance of a contract to convey land must take title subject to the vendor's wife's right of dower, unless she voluntarily releases it, since the court of chancery can only compel a wife to release her right in the manner prescribed by statute or in a case of clear fraud.

12. In a suit to specifically enforce a contract to convey land, a deed, properly executed and acknowledged by the vendor and his wife, is evidence of her willingness to relinquish her dower.

13. Where, in a ·suit to specifically enforce a contract to convey land. it appears that the vendor and his wife have executed and acknowledged a deed to complainant and his wife, the court can decree a delivery of such deed, if complainant will accept it, thus avoiding the necessity of complainant taking title subject to the wife's dower right.

14. If one suing to specifically enforce a contract to convey land would exercise an option to take a deed already made to him and his wife by the vendor and his wife, his wife should be a party complainant, and the bill should allege the execution of the deed and pray for its delivery.

15. A bill to specifically enforce a contract signed by one defendant to convey land held by another defendant should show such situation.

16. Complainant, in a suit to specifically enforce a contract to convey land, having been in possession since a certain date, should show that fact in his bill.

On final hearing on bill, answer, replication and proofs.

*Mr. James McDermit,* for the complainant.

*Mr. Frank E. Bradner* and *Mr. Frank Voigt,* for the defendants.

HOWELL, V. C.

The bill in this case is filed against Wassmer and Radcliffe to compel the specific performance of an alleged contract to convey lands. The so-called contract, a copy of which is given below, was signed by Wassmer, although the title to the lands in question was in Radcliffe. It was testified at the hearing that Wassmer and Radcliffe had some sort of a joint interest in a number of lots of land of which the one in question was one, although their titles were separate and distinct, and that Wassmer had authority from Radcliffe to make the contract in question. The bill does not state whether the agreement was in writing or not. The answer alleges that it was oral, and it sets out what the defendants claim the contract was. The difference between the two consists in this: the defendants, who are the vendors, claim that it was agreed that the land should be conveyed with certain

covenants restricting its use; the complainant, who is the vendee, claims that there was no such agreement.

The agreement between the parties was made in September, 1907, at which time the vendee paid $50 on account of the purchase-money and took a receipt therefor which has been destroyed. On October 3d, 1907, he paid $750 more, making $800 up to that time, and some time prior to October 19th, 1907, he paid the further sum of $202, these three payments aggregating the total amount of the purchase-money that was to be paid in cash. The land was subject to a mortgage held by a building and loan association on which the vendors were liable as bondsmen. Some time between the first and last payment of the purchase-money installments the vendee executed a new bond and mortgage in his own name to take the place of the ones previously executed by the vendors and held by the building and loan association, these being steps preliminary to the taking of the title. At the time the vendee made the payment of the seven-hundred-and-fifty-dollar installment of the purchase-money he received a receipt for it of which the following is a copy:

"IRVINGTON, N. J., Oct. 3d, 1907.

"Received from J. L. Krah the sum of eight hundred dollars on account of purchase price of Smith street property, purchase price to be thirty-five hundred and fifty dollars, two hundred and two dollars to be paid on or before Oct. 19th, 1907. The balance to be paid by said J. L. Krah assuming and agreeing to pay a present Building and Loan mortgage now upon the above premises for twenty-five hundred and forty-eight dollars.

"JOHN WASSMER."

On October 4th, 1907, the vendee, with the knowledge and consent of the vendors, took possession of the said premises and with his wife and family has actually resided thereon until this time. About the time the complainant entered into possession the defendant Radcliffe and his wife executed in due form of law and properly acknowledged a deed of conveyance to the complainant and his wife for the lands in question, which deed did not contain the restrictive covenant that the vendors now insist upon.

The defendants claim that the receipt above set out is not a contract, or, at least, if it is a contract, it belongs to that class

which is known as unilateral contracts and is not specifically enforceable in equity. The law in relation to contracts of this class has received a great deal of judicial attention in this state. In *Cramer* v. *Mooney, 59 N. J. Eq. (14 Dick.) 164,* it was held that a contract for sale of lands, though signed only by the vendor, would not be held to be unilateral in a case where the vendee had paid nine-tenths of the purchase-money and had tendered the balance thereof and had entered into possession of the lands. Vice-Chancellor Grey says: "The defendant has not only paid to the vendor complainant the greater part of the purchase-money, but has actually entered into possession of the premises and tendered the balance of the agreed price and demanded a deed and the clearing of the title, and the complainant has accepted him as a purchaser and tendered him a deed, and now files his bill to enforce payment. These acts of part performance are sufficient to establish a contract between the complainant and defendant which would be enforced in equity even if entirely by parol." Even if the case stood upon this so-called unilateral contract it ceased to be unilateral the very moment the vendee filed his bill for the specific performance of the contract. *Richards* v. *Green, 23 N. J. Eq. (8 C. E. Gr.) 536.* In that case Chief-Justice Beasley, in the opinion in the court of errors and appeals, says: "But it will be observed that when such contracts come to be enforced in equity they cease to be unilateral, for upon filing the bill the party who was before unbound puts himself under all the obligations of the contract. By his own act he makes the contract mutual and the other party is enabled to enforce it. The consequence is that in every case that I can find where specific performance has been ordered a mutual remedy existed upon it at the time of the rendering of the decree." I must therefore hold that this objection is untenable.

The vendors next claim that inasmuch as the bill does not set out the fact that the agreement was in writing the vendee cannot have a decree because of the statute of frauds, the benefit of which the vendors claim, and that it was competent for the defendants by an answer in such case to set up their version of the oral agreement, and that the agreement so set up without

any evidence or proof of any nature is binding on the complainant. In *Ashmore* v. *Evans, 11 N. J. Eq.* (*3 Stock.*) *151,* the bill alleged a parol contract which it prayed might be specifically performed. The defendant denied the agreement alleged in the bill, but admitted an oral agreement which did not substantially differ from the one set out in the bill. The defendant failed to insist upon the benefit of the statute and the court held that the agreement was sufficiently admitted. It has been a constant practice to decree the specific performance of oral contracts to convey land in cases in which the contract in the bill is admitted or substantially admitted by the answer. The insistment of the vendors in this case, however, goes considerably beyond the ruling in any case that I have been able to find. They maintain that they may admit that there was a contract and that they may then set out a very different contract from the one alleged in the bill, and that such contract so set out in the answer is binding upon the complainant and must be taken as the contract which was made between the parties. This statement hardly needs argument to show its fallacy. It would permit a fraudulent defendant to impose upon the complainant any sort of contract that he might choose to put in his answer and would drive the complainant to an abandonment of his suit or compel him to submit to a possibly outrageous fraud. The parties are bound by statements made by the defendants in their answer in so far as they are admissions, or admissions without substantial variation of the charges in the bill, and where the defendants admit a substituted contract the complainant is entitled to have a decree for the specific performance of the substituted contract if he chooses to perform it on his part and he can have such relief in his suit on the original contract. *Ryno* v. *Darby, 20 N. J. Eq.* (*5 C. E. Gr.*) *231.* If, on the whole case, the terms of the oral contract are uncertain, the bill will be dismissed. *Clow* v. *Taylor, 27 N. J. Eq.* (*12 C. E. Gr.*) *418.* The defendants' contention on this point must also be rejected.

It is also urged that the defendants' vendors intended that certain restrictions should be part and parcel of the contract and that they were omitted from it and from the deed by mistake. Pure mistake of fact is sometimes a defence to a suit for

specific performance. *McCormick* v. *Stephany, 57 N. J. Eq.* (*12 Dick.*) *257.* But the circumstances of this case do not indicate that the vendors acted under any misapprehension of fact whatever. They rather show that if any term was omitted from the contract and from the deed it was the result of their own negligence and not of mistake, and it is well settled that this court will never relieve a party from the consequences of his own negligence. *Cairo and Fulton Railroad Co.* v. *Titus, 27 N. J. Eq.* (*12 C. E. Gr.*) *106; Phillips* v. *Pullen, 45 N. J. Eq.* (*18 Stew.*) *6.* This insistment of the vendors must likewise fail.

I think that whether the complainant relies upon the receipt of October 3d, 1907, or upon an oral contract of the character which must be inferred from the bill, he has a valid contract which is enforceable in this court. The bill states the complainant's idea of the contract, and it turns out that he has completed the contract which he has set out by payment of the full consideration and was thereupon let into possession at the time of the payment. This of itself would give the complainant a right to a decree for a deed in accordance with the contract that was proved, whether it be an oral contract or the written one of October 3d, 1907. If the complainant is compelled to stand upon the oral contract I think he may refer to the receipt for the purpose of showing what the terms of the oral bargain were.

It is insisted that Mrs. Krah, the wife of the complainant, had notice that the lands were restricted. This evidence consisted of three items. She saw an advertisement in a newspaper of the sale of the property in question which described it as being situate in a restricted section. There is a large painted sign at the head of the street on which the property is located which describes the neighborhood as a restricted neighborhood. The agent of the vendors told her that the property was restricted so that there could be no nuisance, no saloons, and that all houses were required to be built on the same street line. This was entirely oral; no one had any written document showing exactly what the restrictions were or were to be. The defendant Radcliffe who talked with the complainant never mentioned the restrictions at all, and it does not appear that the complainant

ever had brought home to his knowledge the fact that any restrictions were intended to be inserted in the deed.

There is no positive proof in the case as to exactly what restrictions the defendants are insisting upon. The allegations of the bill in that behalf are not supported. The agent of the vendors was called and gave his evidence as is above stated. They also called a witness named Ecker, who purchased a lot from the vendors and who testified that the restrictions were that the fronts of the houses should all be built on one line and that the houses should be three-story houses; that there should be no factories, saloons or breweries on the premises. If the court were satisfied that it was intended that the use of the land should be restricted, there is nothing in the case to indicate what restrictions were intended or were agreed upon.

I am therefore of opinion that when the complainant bargained for the premises in question, he did so with the idea that he was to receive the title to the property free and clear of all encumbrances, and that he is now entitled to insist upon a conveyance without the restrictions which the defendants are attempting to impose upon him. *Lounsbury* v. *Locander, 25 N. J. Eq. (10 C. E. Gr.) 554.* The case does not differ in its essential features from *Richards* v. *Green, 23 N. J. Eq. (8 C. E. Gr.) 536.* In that case the complainant set forth two agreements, the first being oral, whereby the defendant Richards agreed to convey to the complainant Mr. Green a house and lot for $2,500, to be paid for as follows: $500 in cash, and the remainder secured by bond, with an accompanying mortgage covering the premises. The other agreement was an instrument in writing in favor of the wife of the complainant Green, which was signed by the defendant Richards alone. In that case the complainant was permitted to enter into possession of the premises; and the court examined into the oral agreement and into the written agreement for the purpose of ascertaining what the terms of the actual agreement were. The complainant was given a decree for specific performance.

In this case, on the evidence, the complainant is entitled to a decree. Unless he can have relief in this court and in this suit, he will be in the anomalous position of having a right to the

possession of the land, and of being in actual possession in pursuance of that right without any legally defensible or transmissible title. If, however, he takes a decree in accordance with the prayer of his bill he will be obliged to take the title subject to the inchoate right of dower of Mrs. Radcliffe, unless she is willing voluntarily and gratis to release her interest, for this court has no authority to compel the wife to relinquish her right except in the manner pointed out by the statute, and except also in a case of clear fraud. *Hawralty* v. *Warren, 18 N. J. Eq. (3 C. E. Gr.) 124; Peeler* v. *Levy, 26 N. J. Eq. (11 C. E. Gr.) 330.*

It appears, as already stated, that a deed was executed by the defendants Radcliffe and wife to the complainant and his wife. This deed was before the court at the hearing as an exhibit; it appeared to have been executed and properly acknowledged, not only by Radcliffe, but by his wife also, which may be taken as evidence that she was willing to release her right. In *Hulmes* v. *Thorpe, 5 N. J. Eq. (1 Halst.) 415,* a similar situation was developed, concerning which the chancellor said: "It may be that the wife's acknowledgment of the deed in this case should be considered as equivalent to her express consent to execute it, and that on this ground the court would be justified in making a decree that Thorpe deliver a deed executed by him and his wife, but it would be safer for the court to decree the delivery of the deed already executed by her, and perhaps it would be safer for the complainant." I will follow that course in this case. If the complainant will accept the deed already executed to himself and his wife, a decree will be made that such identical deed be delivered.

If he will not accept this deed he may have a decree for specific performance against Radcliffe alone.

While the complainant is entitled to the relief above indicated upon the evidence, it ought not to be adjudged to him on the present state of the pleadings. I find the following defects in them which must be remedied—*first,* the bill is filed by Mr. Krah alone. If he intends to take advantage of the option to accept the deed made to himself and his wife, the bill should be amended by adding the wife as a party complainant, alleging the execution of the identical deed in question and praying that it should

be delivered; *second,* it appears that the title to the premises is in Mr. Radcliffe alone, and not in Wassmer, that the contract is signed by Wassmer and not by Radcliffe. There should be a proper allegation of these facts and a corresponding amendment to the prayer; *third,* it appears that the complainant has been in possession of the property since October 4th, 1907. There is no allegation of this most important fact in the bill, and it should be amended accordingly. Counsel may find on closer examination that the bill may need amendment in other particulars. On account of these glaring defects in the bill, and the complainant's almost entire misconception of his cause of action, I think that the defendants were justified in answering, and that it would not be equitable to compel them to pay costs. The decree will therefore be without costs against either party.