## ADAMS v. MANNING.

No. 2708.   Decided April 21, 1915 (148 Pac. 465).

1. FRAUDS, STATUTE OF—CONTRACTS. A memorandum, reciting the receipt of thirty dollars as part payment for thirty acres of land, is insufficient to take the case without the statute of frauds, not describing the land.   (Page 84.)

2. SPECIFIC PERFORMANCE—EVIDENCE—SUFFICIENCY. Evidence *held* insufficient to establish the terms of a parol contract for the sale of land, with the clearness and exactness necessary to award specific performance.[1]   (Page 84.)

3. FRAUDS, STATUTE OF—PART PERFORMANCE. Where one who owned considerable land contracted to sell thirty acres, the fact that the purchaser mended fences on a particular thirty acres, and occasionally grazed stock thereon after paying part of the purchase price, is not such a part performance as will take the case out of the statute of frauds; the contract not designating the particular land.   (Page 84.)

4. FRAUDS, STATUTE OF—POSSESSION. Where a contract for the sale of thirty acres of land did not designate the property, and the grantor owned considerable land, mere possession of a particular parcel by letting stock graze thereon will not take the case out of the statute of frauds by identifying the land.   (Page 87.)

---

[1]Citing *Montgomery* v. *Barrett*, 40 Utah 385, 121 Pac. 569; *Price* v. *Lloyd*, 31 Utah 86, 86 Pac. 767.

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by M. Louisa Adams against Harry Manning.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED.

*Goodwin & Van Pelt* for appellant.

*Halverson & Pratt* for respondent.

FRICK, J.

The plaintiff, appellant here, commenced this action as the duly appointed and acting executrix of the last will and testament of one D. C. Adams, deceased, to enjoin the defendant from continuing to trespass on certain real property of which, it is alleged, the said D. C. Adams, on May 14, 1908, the day of his death, was the owner in fee and in possession and entitled to possession. The land in question is specifically described. The respondent filed an answer to the complaint in which he admitted that said Adams died on the date aforesaid, and that "on and prior to the 14th day of May, 1908," said Adams was the legal owner of the land described; admitted that appellant was the duly appointed and acting executrix of the estate of said Adams; and denied all other allegations. Respondent also pleaded a counterclaim in which he, in substance, alleged that on October 19, 1907, he purchased the land described in the complaint for the sum of $100, of which amount, he alleged, he had paid said Adams the sum of thirty dollars; that at the time of said sale said Adams executed and delivered to the respondent the following agreement in writing, to wit:

"October 19, 1907. Received of H. W. Manning thirty dollars ($30) as part payment of thirty acres of land. Price to be $100 for said land. D. C. Adams."

It was further alleged that possession of said land was delivered to the respondent, and that he thereafter built fences and made "valuable improvements" thereon; that on the 29th day of November, 1911, respondent tendered to

appellant the amount "due under said agreement"; that she had refused to receive or accept the same; and that he produces the money in court. Appellant filed a reply to the counterclaim in which she set up the statute of frauds and denied the other allegations. A trial to the court resulted in findings of fact and conclusions of law in favor of the respondent upon which the court entered a decree requiring appellant to specifically perform the alleged contract by executing a deed to said land, etc.

Various errors are assigned, among which are that the court erred in its findings of fact and conclusions of law and in entering a decree as aforesaid. The principal error relied on is that the evidence is insufficient to justify the findings and to authorize a decree of specific performance. In connection with that contention, appellant's counsel insist that the receipt or memorandum pleaded and relied on by respondent is insufficient as a memorandum under the statute of frauds. We think this contention must prevail.

Under all the authorities, the memorandum here in question is wholly insufficient to take the alleged sale out of the statute of frauds for the reason that there is no sufficient or any description of the land alleged to have been sold. See 36 Cyc. 591-593, inclusive; *Marriner* v. *Dennison,* 78 Cal. 202, 20 Pac. 386; Browne on Statute of Frauds (5th Ed.), section 385. We have a case therefore of an alleged parol contract for the sale of real property. Respondent, however, insists that, although the contract rests in parol, it is nevertheless enforceable upon the ground of part performance. The part performance relied on is the payment of the thirty dollars coupled with the alleged possession. As we have seen, however, respondent must rely upon a parol contract of sale.

The first essential, therefore, is to establish that contract. Since the receipt referred to is utterly insufficient to establish a contract, it must be established by other competent evidence. Has respondent produced evidence by which a parol contract of sale is established with that clearness and precision which is required in courts of equity where specific performance of parol contracts respecting the sale of **2, 3** real estate is sought? All the authorities are to the

effect that such contracts must be clearly established, and we are firmly committed to that doctrine. *Montgomery* v. *Berrett*, 40 Utah, 385, 121 Pac. 569; *Price* v. *Lloyd*, 31 Utah, 86, 86 Pac. 767, 8 L. R. A. (N. S.) 870. See, also, 36 Cyc. 543. In the case at bar one of the parties to the alleged contract, namely, D. C. Adams, is dead. Under our statute, therefore, the other party to it is disqualified to testify to any conversation or transaction between him and the deceased, or to any fact relating thereto, which was equally within the knowledge of both. From the evidence it appears that there was no other person present except respondent and the deceased when the alleged contract of sale was entered into. Respondent being disqualified to testify, there is therefore no direct evidence of what the terms and conditions of the contract were. Respondent, however, attempted to bridge over this chasm by putting his son on the stand, who testified, in substance, that he was acquainted with the deceased; that he knew his handwriting; that the signature to the receipt in question was in the handwriting of the deceased; that the respondent went into possession of the land in question about the time the receipt bears date, and since then has remained in possession. The respondent, in substance, testified that he went into possession about that time, and that he has been in possession ever since, and that he had built some fences upon the land and repaired some; that the land was only fit for pasturing stock; and that he had used it for that purpose only. There is also undisputed evidence that D. C. Adams was the owner of a considerable quantity of the same kind or character of land, lying in the vicinity of and adjoining the thirty acres in question; that it was uncultivated pasture land and could be used only for a few months in the year to pasture live stock; and that it had been used for that purpose for a long time prior to 1907, when the alleged contract was entered into. Indeed, the respondent admitted that the only possession he had or took of the land was to permit his stock, or some of it, to pasture on it during a certain period of each year. One or two other witnesses claimed that they were in possession of the land in question some time after the year 1907 for a certain part of the year; but the court found the fact against

them, and we shall therefore not dwell upon that phase of the case except as it may be material in determining the character of respondent's possession. It was also attempted to be shown that the deceased had no other thirty acres of land in that vicinity. This attempt, however, signally failed, even though it had been proper to show such fact under the memorandum or receipt in question. This is not a case where a person sells his house and lot on a certain street, or sells a certain farm or property by its usual name, or otherwise names the property without specifically describing it so that it may by parol evidence be identified as the property mentioned in the memorandum. To refer to the subject-matter of the alleged contract as "thirty acres of land" is not aided by parol evidence since there is absolutely nothing which points to one thirty acres of land any more than to any other thirty acres. No one will seriously contend, we think, that merely to describe the land in the memorandum thus, "I hereby sell a lot 50x100 feet," could be aided by parol evidence. To say "thirty acres of land" is just as indefinite, and therefore cannot be aided.

Respondent therefore has not legally established the terms of any contract. True, one may conjecture what passed between the deceased and the respondent respecting the land, but one cannot say that a particular contract for any particular land was proven. In such cases the contract cannot be assumed and enforced as assumed. As has been well said:

"To call anything a part performance, before the existence of the thing (the contract) whereof it is said to be part performance is established, is an anticipation of proof by assumption, and gets rid of the statute by jumping over it, for the statute requires proof, and prescribes the medium of proof." Roberts on Frauds, 135.

It has been thought by some writers that the foregoing quotation states the law too strongly against the enforcement of parol contracts where such enforcement is based upon the ground of part performance. Perhaps under the peculiar circumstances of some cases in the practical application of the law the statement may be somewhat strong. It has, however, always seemed to the writer that, unless the courts are very careful in the admission of parol evidence and in acting

upon the mere inherent probabilities as such appear to the courts, they will, in equity, enforce parol contracts which are clearly within the statute as readily as courts of law enforce all other contracts and will thus entirely fritter away the statute of frauds. As we view it, no hard and fast rule should prevail in such cases, and the statute should be given due effect, and, if a case is presented the inherent equities of which require specific enforcement, it should be enforced without hesitation, and if, upon the other hand, such is not the case, specific enforcement should be denied. If it can be said that a contract of sale is established in this case, we may meet tomorrow with a case where the alleged purchaser issued and delivered to the alleged vendor a check on which the former wrote the words "part payment of ten acres of land," and, in view that the alleged vendor has indorsed the check and received the money and then has died, the alleged purchaser produces the check and indorsement, and in connection therewith claims he took possession, constructive or otherwise, of the land alleged to have been sold, and asks and is given specific performance if he will pay the remainder of the purchase price whatever it may be. What becomes of the statute of frauds under such circumstances? In this case therefore a contract, in our judgment, has not been sufficiently established, and without a specific contract there is nothing to enforce.

Counsel for respondent, however, seem to think that their client can prevail upon the ground that he went into possession of the thirty acres of land. Proof of possession alone cannot establish the contract which it is sought **4** to have specifically performed. Proof of possession may be very strong evidence of part performance of a particular contract. In order, however, to make possession available as part performance, it must appear that it was given or taken in pursuance of the parol contract proved; that such possession was notorious, that it was exclusive and of the very tract of land which was the subject of the contract, and some courts have held that the possession must be actual and of the whole tract. See Browne on the Statute of Frauds,

Sections 473-477, inclusive. In speaking of the character of possession in such cases, it is said:

"To allow a mere technical possession not open to the observation of the neighborhood, and capable of being proved only by select and confidential witnesses, to be sufficient for obtaining a decree to enforce the contract, would manifestly afford an opportunity for the encouragement to dishonest testimony."

Moreover, in view that possession is a prerequisite upon which is based the right to prove a contract by parol evidence, the possession should be established without qualification or doubt. In this case the proof of the character of the possession is not as clear and satisfactory as it should be. To say the least, it does not seem to have been generally known in the neighborhood, since the property always was assessed to the estate and it paid the taxes during all of the years after 1907 until the time of trial in 1912. Then, again, respondent's claims are entirely devoid of equity. While he claims that he built and repaired fences, he nevertheless utterly failed to produce any evidence whatever of their value. Notwithstanding this dearth of evidence, however, the court found that the respondent built fences and "made valuable improvements" on the land. We can only account for this finding upon the theory that the record discloses that the case was tried in September, 1912, but not decided until March, 1914, and the bill of exceptions was not settled until the following April. It may be, therefore, that the court had forgotten, or at least overlooked, the important points of the evidence. Indeed, it is only upon the foregoing theory that we can understand how the court could have found that a contract was established with that degree of certainty required in equity for specific performance.

With a view of finding some case where a court has held that under facts and circumstances like those in the case at bar a decree of specific performance was proper, we have examined the following cases from the following jurisdictions: *Rovelsky* v. *Scheuer,* 114 Ala. 419, 21 South, 785; *Arkadelphia L. Co.* v. *Thornton,* 83 Ark. 403, 104 S. W. 169; *McCarger* v. *Rood,* 47 Cal. 138; *Marriner* v. *Dennison,* 78 Cal. 207, 20 Pac.

386; *Carr* v. *Howell,* 154 Cal. 372, 97 Pac. 885; *Demps* v. *Hogan,* 57 Fla. 60, 48 South 998; *Morgan* v. *Battle,* 95 Ga. 663, 22 S. E. 689; *Wilkie* v. *Miller,* 171 Ill. 556, 49 N. E. 484; *Denlar, Adm'r.* v. *Hile,* 123 Ind. 68, 24 N. E. 170; *Caldwell* v. *Drummond* (Iowa) 96 N. W. 1122; *Green* v. *Jones,* 76 Me. 563; *Moale* v. *Buchanan,* 11 Gill & J. (Md.) 314; *Ayres* v. *Short,* 142 Mich. 510, 105 N. W. 1115; *Atkins* v. *Little,* 17 Minn. 342 (Gil. 320); *Simmons* v. *Headlee,* 94 Mo. 482, 7 S. W. 20; *Southmayd* v. *Southmayd,* 4 Mont. 100, 5 Pac. 318; *Morrison* v. *Gosnell,* 76 Neb. 539, 107 N. W. 753; *Krah* v. *Wassmer,* 75 N. J. Eq. 109, 71 Atl. 404; *Dunckel* v. *Dunckel,* 141 N. Y. 427, 36 N. E. 405; *Sprague* v. *Jessup,* 48 Or. 211, 83 Pac. 145, 84 Pac. 802, 4 L. R. A. (N. S.) 410; *Graft* v. *Loucks,* 138 Pa. 453, 21 Atl. 203; *Peay* v. *Seigler,* 48 S. C. 512, 26 S. E. 885, 59 Am. St. Rep. 731; *Holmes* v. *Caden,* 57 Vt. 111; *Bryson* v. *McShane,* 48 W. Va. 126, 35 S. E. 848, 49 L. R. A. 527; *Hege* v. *Thorsgaard,* 98 Wis. 11, 73 N. W. 567; and *Brown* v. *Sutton,* 129 U. S. 238, 9 Sup. Ct. 273, 32 L. Ed. 664.

While more cases illustrating the doctrine of specific performance could have been cited, we have selected the foregoing for the reason that it is conceded that specific performance was granted in those cases upon what, in popular phraseology, may be termed liberal terms with regard to part performance. The only jurisdiction, however, in which it may be said specific performance was decreed upon what seem to be very liberal terms, is Oregon, in the case of *Sprague* v. *Jessup, supra.* Even in that case, however, the Supreme Court sustained the judgment of the lower court only because the parol contract was held to have been clearly established and for the reason that that court thought it discovered some equities in favor of the purchaser. The result in that case was, however, not unanimous. Moreover, in that case both parties to the contract were living and testified at the trial. Where such is the case, and the contract is clearly established, and the possession and the character thereof is without dispute, some courts have gone great lengths to find some ground upon which to base a decree for the enforcement of the contract. A careful examination of the foregoing cases will disclose, however, that

in each case the court based its ruling upon some strong and tangible equity in favor of the vendee or lessee, as the case may be. In many of the cases the court found that the refusal to decree specific performance would result in permitting the defendant to perpetrate a fraud upon the plaintiff, and that such would have been the case is made clearly apparent from the facts reported. Nothing of that character exists in this case. According to respondent's own evidence, as it now stands, he received more from the use of the property than he has paid. Not a single equity, not even the inconvenience of removing from the land, is thus shown. How can respondent complain, therefore, when he has wholly failed to establish an enforceable contract with that clearness which would authorize a court of equity to enforce it, and where he had not shown a single equity in his favor to invoke the aid of a court of equity?

By what we have said we do not wish to be understood as passing upon the question of whether, in a case where the contract is clearly established and the possession and the character and purposes thereof are not in dispute, possession alone, or possession coupled with part payment without other equities, is or is not sufficient to authorize a court to decree specific performance of the contract. That question is not necessarily involved here, and hence we leave it undecided.

From what has been said, it follows that the judgment should be, and it accordingly is, reversed; and the cause is remanded to the district court of Davis County, with directions to make findings of fact and conclusions of law and to enter judgment in favor of the plaintiff as to title and possession of the property in question. With regard to damages the court is directed as follows: The parties stipulated the rental value of the land in question during defendant's occupation thereof to be sixty dollars. The defendant paid thirty dollar to D. C. Adams during his lifetime, and also built some fences and made some repairs, the value of which is not shown; but enough is made to appear from the evidence that neither were of great value or importance. In view of the whole evidence, we think that justice is best subserved by closing this litigation. The court will therefore enter judg-

ment awarding plaintiff nominal damages, merely, together with the costs of the action. Defendant to pay the costs of this appeal.

McCARTY, J., concurs.

STRAUP, C. J.

I concur. I think the memorandum, for several reasons, is wholly insufficient to satisfy the statute of frauds. The evidence, *aliunde* the memorandum, considered alone or with the memorandum, fails to show a contract complete or certain in its terms. The respondent thus invokes equity to enforce, not a contract sufficiently evidenced by a writing to satisfy the statute of frauds, but one resting partly in writing and partly in parol and which is not even shown to be either complete or certain. When one thus seeks to specifically enforce a contract concerning realty, void because of the statute of frauds, he is required to show by clear and convincing proof, not only elements of completeness and certainty, but equities as well, and as stated in Pomeroy's Specific Performance of Contract, p. 144, and Pomeroy's Equity Jurisprudence (3d Ed.) Section 1409, approved in *Price* v. *Lloyd,* 31 Utah, 86 86 Pac. 767, 8 L. R. A. (N. S.) 870. Since there is shown neither a contract certain or complete in its terms, nor equities to justify specific performance, I therefore concur.