[Civ. No. 7751.   Third Dist.   May 29, 1950.]

SCHLAGETER ESTATE COMPANY (a Corporation), Respondent, v. WALTER A. KOONTZ et al., Appellants.

Everett L. Coffee and Roy E. Wolfe for Appellants.

Green, Chandler & Green for Respondent.

VAN DYKE, J.—Appellants Walter A. Koontz and J. W. Meeks appeal from a judgment rendered by the Superior Court in Madera County, which judgment determined that the respondent Schlageter Estate Company, a corporation, was the owner of certain personal property consisting of pumps, well casing and pipes which had been placed upon the property of respondent by appellant Koontz during the term of a lease.

Under date of January 5, 1946, the respondent leased to the appellant Koontz approximately 560 acres of land in Madera County for a term of one year ending January 5, 1947, at a rental of $5,500. That lease contained a provision that Koontz might remove such improvements as he might have cause to place upon the property. Koontz went into possession under this lease and while he was still in possession, and prior to the expiration of the term, respondent sent him a letter dated October 29, 1946. This letter proposed a further lease. It stated that the respondent corporation was willing to rent to him for a two-year period the 560 acres which he then had under lease and approximately 60 acres in addition thereto. The proposed rental for the whole acreage was $7,000 per year and the proposal contained the following matter: "It is agreed that you are to spend approximately Five Thousand Dollars ($5,000.00) on leveling the additional Sixty (60) acres, installing ditches, pumps and various other improvements, and all improvements, including pumps, are to become the property of the Schlageter Estate Company on the termination of lease, with the exception of a portable house, which you contemplate placing on the premises." The letter contained this additional proposal: "The formal lease is to contain the same general terms and conditions as former leases . . .." The letter closes as follows: "Please indicate your acceptance on the enclosed copy of this letter and return to us." This letter was received by appellant Koontz, and thereafter he wrote upon the enclosed copy the following: "ACCEPTED THIS 18 day of November, 1946. W. A. Koontz." He then returned the copy to the respondent.

Notwithstanding the reference in the letter to a formal lease the parties never executed such a document. Appellant Koontz continued to possess the property he had been in possession of under the first lease and also entered into possession of the additional acreage referred to in the letter. Apparently appellant Meeks had some interest under Koontz but his rights are dependent upon the rights of Koontz.

Koontz expended substantially more than $5,000 upon the whole property. He did leveling work upon the additional acreage, and drilled wells upon the land embraced in the first lease. He cased the wells and laid pipe from the pumps. Shortly before the expiration of the two years referred to in the letter he wrote to respondent, saying: "In regard to the improvements we placed upon the Estate Company's land beyond what the lease called for we are going to remove."

Thereupon the respondent began this action in the superior court asking that Koontz and Meeks be restrained permanently from removing any pumps, pipe lines or any other improvements from the premises. Additional relief was asked in the way of restraint from damaging or selling the improvements, and from plowing up or otherwise damaging the alfalfa growing upon the property.

Respondent alleged that the proposal letter and the acceptance thereof constituted a written lease, and that Koontz had possessed the property under its terms. Answering and cross-complaining appellants challenged this construction of the writings and alleged that the proposal letter and the acceptance plus the first lease constituted ''*a* lease of the premises therein described.'' They alleged that Koontz had placed upon the premises described in the first lease certain improvements consisting of pumps, pipe and casing. They sought judgment permitting removal of the pumps, pipe and casing, contending that the second lease contained by reference to the first lease that covenant therein providing for such removal. Koontz asked general damages for respondent's wrongful withholding of the improvements.

After the trial the trial court found that the letter and acceptance constituted ''the written lease of the premises,'' and that Koontz had occupied the property from January 15, 1947, under the terms of the lease contained in the letter and the acceptance. The court found that Koontz had placed upon the leased property certain pumps, well casing and pipe. The court further found that threats had been made to remove the property and to sell the same; and that Koontz had further threatened to commit waste by plowing up the alfalfa. The court specifically found that the covenants in the first lease permitting removal of improvements constituted no part of the second lease evidenced by the letter and the acceptance.

Responsive to these findings of fact the court by its judgment decreed respondent to be the owner of the improvements and permanently restrained appellants from removing them. The court further restrained appellants from attempting to damage or sell or encumber these improvements and from committing waste with respect to the alfalfa or other growing crops.

■ Although complaint is made justifiably that there was no evidence in support of the findings that appellants in any way were threatening to damage or had damaged the crops,

yet that part of the judgment does no harm if the other findings mentioned are correct, and since we have concluded that they are, no further attention will be paid to the claim that the court should not have restrained waste. ██ Appellants state the issue presented by their appeal puts in question the title to the improvements made by Koontz on the property described ''in the first lease, the 560 acres.'' They base their claim of title on two grounds; contending the first lease and the letter and acceptance constitute a single lease for the second term, they argue that the provision in the first lease permitted removal of improvements placed on the 560 acres during that second term; next they claim title to these same improvements by the construction they place upon that sentence in the letter reading, ''It is agreed that you are to spend approximately Five Thousand Dollars ($5000.00) on leveling the additional Sixty (60) acres, installing ditches, pumps, and various other improvements, and all improvements, including pumps, are to become the property of the Schlageter Estate Company on termination of lease, with the exception of a portable house, which you contemplate placing on the premises.''

These contentions we think cannot be sustained. The letter and acceptance cannot be considered as a continuance or renewal of the first lease for the following reasons: A different term was prescribed, a different and increased rent was reserved, additional land was included and all the necessary elements of a lease are contained in the letter and acceptance. This proposition finds support in the following cases: *Levin v. Saroff*, 54 Cal.App. 285, 289 [201 P. 961]; *Gavina* v. *Smith*, 25 Cal.2d 501 [154 P.2d 890].

In the Levin case the court said:

''To create a valid lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and boundary of the property leased; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment. These appear to be the only essentials. . . . Where the parties have agreed upon all essential facts there is a binding contract, notwithstanding the fact that a more formal contract is to be prepared and signed later. . . . The mere fact that a written lease was in contemplation does not relieve either of the contracting parties from the responsibility of a contract which was already expressed in writing.''

True, reference is made to the first lease and parts thereof

so referred to are incorporated by such reference. Thus reference is made to "the five hundred sixty acres you now have under lease." So we look to the first lease for the particular description therein contained.　■　Reference is also made to the "general terms and conditions" of the former lease. And appellant contends that this reference incorporates into the new lease that sentence in the first lease reading: "The party of the second part may remove such improvements as he may have cause to place on the property." This contention cannot be sustained. The provision for removal of improvements found in the first lease did not constitute a general term or condition thereof, and the provision of the second lease that a formal lease, to be executed, would contain the same *general* terms and conditions as former leases did not refer to the removal of improvements. That provision of the first lease was a special and not a general term and condition. The word "general" means "pertaining to . . . all of the members of a class, kind or order . . . as a general law" and its antonyms are "particular, specific, precise, . . . special." (Webster's New International Dictionary.) General terms and conditions of leases therefore are those generally contained in all leases, that is, such things as covenants of quiet enjoyment, covenants for peaceful surrender, covenants against waste, and the like. As stated in *Bondy* v. *Harvey*, 67 F.2d 521, 523: "The phrase 'all the usual and formal clauses' we think was intended to state generally such clauses as the forfeiture, peaceful possession, warranty, surrender, reentry and other clauses which are formal in leases." The provision for removal of improvements of whatsoever kind and character and howsoever annexed or affixed to the premises is certainly not a general term or condition of leases nor was it a general term or condition of the first lease between the parties hereto. On the contrary it was special. The first lease was for one year. It required no improving of the property whatsoever. The shortness of its term and the absence of any requirement for improvement rendered it quite reasonable that anything placed upon the property by the tenant appropriate to the intended use of the property could be taken away by him. On the contrary the second lease was for a longer term and did provide specially, as a part of the compensation for the use of the property, that improvements to the sizable extent of $5,000 must be placed thereon. And it further specifically provided, by all fair intendment, that when so placed the

improvements could not be removed. We hold that whatever the parties intended by the stipulation that a formal lease, to be executed, would contain the same general terms and conditions of the earlier lease, they did not intend thereby to affect in any way the precise stipulation in the later lease concerning improvements.

We are thus brought to the interpretation of the provisions about the improvements contained in the second lease and to the claim of appellants that regardless of the effect or lack of effect of the provisions of the first lease, the second lease by its own terms permitted the removal of improvements placed upon the 560 acres contained in the first lease, and that the provisions against removal were limited to such improvements as might be placed upon the 60 acres.

Appellants contend that the hereinbefore quoted sentence refers solely to improvements that might be placed upon the 60 acres including the funds expended in leveling the same. The sentence does not so expressly declare and we think it cannot be so construed or interpreted. The purpose of the sentence was to express the covenant that in addition to the cash rental reserved, the tenant was to expend upon the property an additional $5,000, to consist specifically of leveling the additional 60 acres, and generally of installing upon the leased property ditches, pumps and various other improvements which, when so installed, would become the property of the lessor. Such was the construction given by the trial court of a sentence that admittedly is not as clear as it might have been, and we think this construction was reasonably logical and correct. If we turn to the grammatical construction of the sentence we find further support for the interpretation of the trial court. The sentence is compound, two complete sentences being joined by the conjunction "and." The first sentence reads "It is agreed you are to spend approximately Five Thousand Dollars ($5,000.00) on leveling the additional Sixty (60) acres, installing ditches, pumps and various other improvements." The subject of the sentence is "you," the predicate, "are to spend," the object, "approximately Five Thousand Dollars ($5,000.00)." The rest of the sentence states what the money is to be spent for. It is to be spent on leveling the 60 acres, on the installation of ditches, of pumps and of various other improvements. The leveling is to be done on the new acreage added to land covered by and farmed under the first lease. But nothing in the sentence re-

quires Koontz to put any pumps, pipe or casing on this 60 acres rather than on the balance of the land.

The second sentence of this compound sentence is clear, positive and all embracing in its terms. Its subject is "all improvements." This subject cannot be limited to the improvement placed on the 60 acres without incorporating into the sentence something the parties did not put there.

We conclude that the trial court's interpretation of the contract of lease between the parties hereto was correct and that being so it follows that the judgment herein must be and it is hereby affirmed. The appeal from the order denying defendants' motion for a new trial is dismissed. (Code Civ. Proc., § 963.)

Adams, P. J., and Peek, J., concurred.