Joseph A. **SHRIBER** and Domesticated Frog Farms, Inc., Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 9868.

United States Court of Appeals Tenth Circuit.

July 12, 1968.

Milton A. Oman, Salt Lake City, Utah (Reed L. Martineau, Salt Lake City, Utah, on the brief) for appellants.

Jacques B. Gelin, Atty., Dept. of Justice (Clyde O. Martz, Asst. Atty. Gen., William T. Thurman, U. S. Atty., F. T. Wetzel, Asst. U. S. Atty., and S. Billingsley Hill, Atty., Dept. of Justice, on the brief), for appellee.

Before PHILLIPS, HILL and HICKEY, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

This is an action for a declaratory judgment, brought under 28 U.S.C.A. § 2201 by the United States against Joseph A. Shriber and Domesticated Frog Farms, Inc., et al., to resolve an actual controversy between the parties, with respect to the validity of an instrument which purports to be a lease of 100 acres of land situated in Township 11 South, Range 14 West, Salt Lake Base and Meridian, and for other appropriate relief.

On July 2, 1953, the date of the purported lease, Fish Springs Livestock and Fur Company[1] and James P. Harrison and Hugh B. Martin were the owners in fee of approximately 2,160 acres of land situated in parts of Sections 1, 11, 12, 13, 14, 23, 24, 25, 26, and 36, in Township 11 South, Range 14 West, Salt Lake Meridian.

The instrument purported to grant a lease from Fish Springs Company and Harrison and Martin to Shriber for

"\* \* \* One Hundred (100) acres of land located within the confines of Fish Springs Livestock and Fur Co. at Juab County, Utah, said premises to be located within Section ____, Township 11 South and Range 14 West, Salt Lake Base and Meridian, United States Survey."

The lease provided that:

"A more particular description of said leased premises may be attached to this lease as a part thereof upon completion of a survey."

and further provided that:

"Lessee agrees to pay as rent for the above demised and leased premises the sum of $1.00 per year and in addition thereto a sum equal to 10% (ten per cent) of the income realized from the lessee's use of said premises, after the payment of corporate taxes.

"Lessee agrees that his use of said premises shall be restricted to the culture, raising, producing and marketing of frogs, and that he will not permit or suffer the said premises or any part thereof to be used for any other purposes than those recited above."

The lease provided that its term should be 99 years, commmencing with the second day of July, 1953.

A more particular description of the leased premises was never attached to the lease or agreed to by the parties thereto. The parties at no time either orally agreed upon, or marked out, or identified any particular tract of land as being the land embraced in the lease.

On March 10, 1959, the Fish Springs Company duly conveyed to the United States by warranty deed the several tracts of land owned by it, aggregating 2,160 acres located in the 10 different Sections referred to above in such Township 11 South.

Thereafter, in 1961, representatives of the United States, in an effort to compromise and settle the dispute, undertook to reach an agreement with Shriber to fix, lay out, and mark on the ground as the leased premises a tract of 100 acres in the land area conveyed by the Fish Springs Company to the United States.

On October 30, 1961, Lynn A. Greenwalt, Assistant Regional Supervisor, Division of Wild Life Refuges, by letter advised Shriber that he had laid out a 100-acre tract for the latter's approval and that it had been marked and was ready for inspection by Shriber. The tract so laid out and marked was in Section 23. Shriber at no time approved such tract laid out by Greenwalt nor agreed to accept it as the land embraced in the lease. It was an abortive effort to compromise the dispute and it had no binding effect on the rights of the parties.

After the lease was executed, Shriber went upon the lands of the Fish Springs Company in Section 23 and upon the adjacent public domain of the United States, which was part of a wild life

---

1. Hereinafter called Fish Springs Company.

refuge, and built dikes, dams, ditches, and other works to be utilized in the raising of frogs for commercial purposes. No less than half of such works were constructed by Shriber on the public domain.

The frog raising project was a failure. No profits were realized and no rentals were paid, pursuant to the 10 per cent provision in the lease quoted above.

The court found that the description in the purported lease was uncertain and indefinite and was not thereafter made definite and certain by a survey and concluded that the lease was invalid, because of uncertainty in the description of the leased premises.

■ To be valid, a lease must describe the leased premises with reasonable certainty, either by particular words or by reference to something by which the location of such premises can be determined.[2]

The lease in the instant case clearly contemplated that the parties would agree upon a particular 100 acres of land in the main body, and have a survey thereof made and attach to the lease a particular description of the leased premises. That was never done by the parties and when the United States, after it acquired the land, undertook to settle the controversy by laying out and marking a particular tract of land for Shriber's approval, Shriber took no action.

■■ Where an agreement fails to specify a particular time for the performance of a provision therein, the law presumes that performance must take place within a reasonable time.[3] The instant action was not brought until more than 13 years after the lease was executed and more than four years after the United States failed to resolve the controversy by an agreement with Shriber upon a particular 100 acres of land to be the leased premises, which tract was situated in Section 23, where Shriber had constructed part of the frog farm works. Certainly, more than a reasonable time elapsed for the carrying out of the provision of the lease to make the description of the leased premises definite and certain, before the United States resorted to court action to resolve the controversy.

The court entered a judgment by which it declared that the defendants, their successors and assigns had no right or interest in any of the land that formerly belonged to the Fish Springs Company in Township 11 South, Range 14 West, Salt Lake Base and Meridian.

The judgment provided that the defendants should have 60 days from the date of execution of the judgment to remove from the land any personal property belonging to them and any improvements placed on the land by them, which could be removed without danger to the freehold.

For the reasons above indicated, we conclude that the judgment of the trial court was correct and it is accordingly affirmed.

2. Beckett v. City of Paris Dry Goods Co., 14 Cal.2d 633, 96 P.2d 122, 127; Schlageter Estate Co. v. Koontz, 97 Cal.App.2d 814, 218 P.2d 814, 817; McBride v. Steinweden, 72 Kan. 508, 83 P. 822, 824. See also, Adams v. Manning, 46 Utah 82, 148 P. 465, 466, where the court held a contract of sale of 30 acres of land out of a larger number of acres owned by the grantor had failed to designate the land with sufficient specificity and was therefore void for indefiniteness of description.

3. Trailmobile Co. v. Whirls, 331 U.S. 40, 54, 55, 67 S.Ct. 982, 91 L.Ed. 1328; Twin Lakes Reservoir and Canal Co. v. Bond, 156 Colo. 433, 439, 399 P.2d 793, 796; Curzon v. Wells Cargo, Inc., 86 Idaho 38, 43, 382 P.2d 906, 908.