[Civ. No. 57155. Second Dist., Div. Five. Sept. 4, 1980.]

AMIL W. ROTH, Plaintiff and Appellant, v.
DEPARTMENT OF VETERANS AFFAIRS,
Defendant and Respondent.

COUNSEL

Amil W. Roth, in pro. per., and Earl H. Greenstein for Plaintiff and Appellant.

Howell Y. Jackson for Defendant and Respondent.

OPINION

DOWDS, J.*—Plaintiff brought this class action on behalf of himself and others similarly situated who, since 1968, have purchased homes or farms from defendant (Cal-Vet purchasers) under written contracts which did not expressly provide for an additional charge in the event a payment under the contract was not timely made (a late charge). Plaintiff alleged that defendant had assessed and was continuing to assess late charges against plaintiff and some members of the class and the

*Assigned by the Chairperson of the Judicial Council.

complaint sought damages for breach of contract, declaratory relief, an injunction and an accounting. The complaint pointed out that since about November 1974, defendant had been using a form contract which expressly provided for the assessment of late charges and that persons entering into such contracts with defendant were not members of the class. The action was certified as a class action and plaintiff was appointed class representative by order of the superior court. He requested that he be relieved of the necessity of giving notice to the class. That request was denied and the court ruled that defendant should print the notice and bill plaintiff for the cost of the printing, defendant should give notice (at its expense except for printing the notice) to all present Cal-Vet purchasers by inserting a copy of the notice with the monthly statements mailed to such purchasers and that defendant should determine from its records the names and addresses of and other pertinent information respecting class members who were not current Cal-Vet purchasers and mail notice to them. Defendant was authorized to charge plaintiff its costs in ascertaining the pertinent information respecting class members who were not current Cal-Vet purchasers and in giving notice to them, but not in excess of $11,815. According to defendant these expenses ended up totaling $13,670. Thus plaintiff was required to pay for the printing of the notices and not to exceed $11,815 of expenses in connection with notice to the inactive Cal-Vet purchasers and defendant bore the expense, except for printing, of giving notice to active Cal-Vet purchasers and any costs in excess of $11,815 in respect of the inactive ones. The order also required plaintiff at his expense either to publish notice or to take certain follow-up procedures concerning Cal-Vet purchasers whose notices were returned by the post office. The order further provided that if plaintiff prevailed in the lawsuit he could obtain reimbursement of his notice expenses from the funds recovered but that such expenses should not be taxable as costs.

Pursuant to an order of court, the action proceeded to a nonjury bifurcated trial on the issue of liability only. Plaintiff had not by the date of trial paid the notice expenses billed to him by defendant, which moved for dismissal of the action or, in the alternative, for revocation of the certification as a class action. Plaintiff's counsel responded that plaintiff was able, ready, and willing to make payment of the amounts that may be required under the court order at such time as it became clear that he must do so and displayed a savings account book showing a balance of $12,704. After argument by counsel as to whether defendant had adequately established that it had incurred the costs for which

it billed plaintiff, the court ordered plaintiff to pay $11,815 to defendant by 4 p.m. of the following day and otherwise denied defendant's motions. That sum was paid and the trial proceeded to a judgment for defendant.

Plaintiff purports to appeal from the judgment and from the order requiring notice to be given to members of the class. Although the latter order is not appealable (Code Civ. Proc., § 904.1), we can review it on appeal from the judgment (see 6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4048-4049). He makes three contentions on appeal: (1) the collection of late charges is authorized neither by the contract nor by statute; (2) the late charge provision was invalid because it was a regulation within the meaning of the Administrative Procedure Act (Gov. Code, § 11370 et seq.) and the provisions of that act were not complied with; and (3) the requirement that plaintiff pay part of the expenses of notice to the class was a violation of his constitutional right to petition for redress of grievance (U.S. Const., Amend. I).

The trial court made findings of fact and conclusions of law in which it determined, insofar as pertinent to the issues on appeal, that the collection of late charges was authorized by the contract in question and by Military and Veterans Code section 986.9 and that the late charge provision was not a rule, regulation, order or standard of general application as defined in Government Code section 11371 requiring compliance with the Administrative Procedure Act.

■ Turning first to the merits of the judgment, we note that so far as the record on appeal discloses, no extrinsic evidence was offered or received as to the meaning or interpretation of the contract or the statutes. Under these circumstances we are not bound by the trial court's determination and must independently ascertain the meaning of the pertinent statutes and contractual provisions (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630]).

The Veterans' Farm and Home Purchase Act of 1943 (Mil. & Vet. Code, § 984 et seq.) provides, in general, for the acquisition by defendant of farms and homes from the owners thereof and the resale of the same to certain persons who are or have been in the military, naval, or air service of the United States. Section 987.1 of such code provides that, with an exception not here pertinent, "the department [defendant]

in each individual case may specify the terms of the contract entered into with the purchaser...." Section 986.9, which the trial court cited in its conclusions of law as authorizing the late charge, reads in pertinent part as follows: "The department shall then enter into a contract with the veteran for the sale of the property to the veteran. The department shall fix the selling price of the property by adding to the purchase price thereof, to the total cost of improvements constructed, or to the value of such property as determined by the department when such property is acquired by the department in a manner other than by purchase, all expenses incurred and estimated to be incurred by the department in relation thereto, inclusive of interest, administration, appraisals, examination of title, incidental expenses, and the sum deemed necessary to meet unforeseen contingencies...." We have no quarrel with the proposition that defendant could have, if it wished, provided in its contract with the veteran for an additional reasonable charge if a periodic payment on the purchase price were not made within the time provided by the contract, and, as heretofore indicated, it apparently expressly did so in contracts entered into after November 1974. We doubt, however, that section 986.9 adds much, if anything, to the authority conferred by section 987.1 in this connection.

Plaintiff's argument based on a comparative and historical analysis of various statutes, that the legislative scheme does not envision a late charge is unconvincing. We look to the language of the contract to see if in fact it has provided for such a late charge.

The contract states that it "is made by the Department and accepted by the Purchaser on each of the following terms and conditions, *and not otherwise*...." (Italics added.) The terms and conditions which follow do not mention late charges. The only provision of the contract urged by defendant as authorizing the late charge is paragraph 1 reading as follows: "The selling price for said property shall be the sum of _____ Dollars ($_____) and all expenses incurred and estimated to be. incurred by the Department in relation thereto, as provided in Section 986.9 of the [Military and Veterans] code...." Defendant argues that this provision authorizes it to assess an additional charge at any time during the existence of the contract to cover additional expenses resulting from late payments. Plaintiff, on the other hand, views this language as only permitting defendant, at the inception of the contract, to include in the selling price an amount to cover expenses theretofore incurred or estimated to be incurred in the future.

We consider the proper interpretation of the contract in the light of well-recognized principles. ■ Any uncertainty in the contract must be construed against the drafter, even if the drafter is a public body. (*Weeshoff Constr. Co.* v. *Los Angeles County Flood Control Dist.* (1979) 88 Cal.App.3d 579, 587-588 [152 Cal.Rptr. 19].) All contracts, whether public or private, are to be construed by the same rules (Civ. Code, § 1635; *Oberg* v. *City of Los Angeles* (1955) 132 Cal. App.2d 151, 158 [281 P.2d 591]). (On the other hand, under Civil Code section 1069, a grant by a public officer or body to a private party is to be interpreted in favor of the grantor.) ■ The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other (Civ. Code, § 1641). ■ The law does not favor penalties or forfeitures and provisions in a contract are construed strictly against them (see *Cantlay & Tanzola, Inc.* v. *Ingels* (1939) 31 Cal.App.2d 553, 556-557 [88 P.2d 141]; Civ. Code, § 1442). In this connection, we note from *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39], that late charges are, or at least can be, a penalty.

The contract, in paragraph 1, provides that the selling price, in excess of an initial deposit, including interest thereon, "shall be paid in equal monthly payments of $_____ each...." As hereinbefore pointed out, "selling price" is defined in the contract as including all expenses incurred and estimated to be incurred by defendant in relation to the sale. If the contract were interpreted to mean that such expenses could be assessed from time to time during the life of the contract the monthly payments would not be equal and the provision quoted above would be meaningless.

Where the drafter of the contract intended the purchaser to be obligated to pay an additional sum, he or she said so in no uncertain terms. For example, if the contract is paid off in the first two years, the purchaser "will be required to pay *an additional sum* on said contract amounting to 2 percent of the above-stated selling price." (Italics added.) Further, under defendant's contention, the 2 percent would be computed on not only the initial selling price but also on all late charges theretofore assessed. It seems to us unlikely that this was the intention of the parties.

Further, the contract expressly requires the purchaser to pay monthly, in addition to the monthly installments provided, "such sums as

may be charged to said Purchaser for taxes, insurance, repayment of additional loans, or advances made by the Department on behalf of the Purchaser." ■ No mention is made of payment, as an additional amount, of late charges, and, under a familiar rule of construction the specific inclusion of taxes, insurance, loans, and advances indicates an intention to exclude items not mentioned, such as late charges. (*Jones* v. *Robertson* (1947) 79 Cal.App.2d 813, 816 [180 P.2d 929].) Other provisions of the contract require the purchaser to repay to defendant amounts advanced on the purchaser's behalf and specify how the repayment is to be made. For example, paragraph 8 provides that if the purchaser fails to pay taxes on the property, defendant may pay them and such payments shall be added to the selling price of the property and repaid to defendant on demand or, at defendant's option, in installments. Again, no provision respecting late charges appears.

The failure to make a timely monthly payment would of course be a breach of the contract. Paragraph 10 gives defendant a remedy in the case of such a breach—to cancel the contract. Paragraph 11 requires that before defendant cancels the contract it must give the purchaser notice of its intention to do so on a certain day and further provides, "the Purchaser shall have the right on any day before the day fixed to comply with and perform the terms of this contract for which he may be in default, including the full payment of the amount, if any, in arrears, with interest thereon, and after such compliance, performance or payment, said contract shall not be cancelled because of such default...." Again the absence of any mention of a late charge is noteworthy.

It would be bootless further to parse the language of the contract. Read provision by provision or as a whole it does not provide for the payment of late charges. The trial court erred in determining that such charges were provided for either in the contract or in the statutes. This holding compels reversal, but for the guidance of the trial court on any retrial, we discuss two other points raised on appeal.

The trial court, while finding that defendant began assessing a late charge in 1968 against all veteran purchasers who did not make timely installment payments, determined that the late charge provision is not a rule, regulation, order or standard of general application as defined in Government Code section 11371, subdivision (b), and thus does not have to be adopted in the manner provided by the Administrative Procedure Act. Defendant supports this determination on the basis that the

late charge does not have application to all the citizens in the state. This is, we believe, an overly broad reading of the words "of general application." The provision applies to all veteran purchasers and it comes into effect whenever any of them fails to make a payment within the time required. ■ As pointed out in *Schlageter Estate Co. v. Koontz* (1950) 97 Cal.App.2d 814, 819 [218 P.2d 814], the word "general" means pertaining to all of the members of a class, kind, or order. For a rule of a public entity to be "of general application," it does not have to apply to all the citizens of the state. We further disagree that the late charge provision establishes or fixes a rate, price or tariff and is thus within the exemption of Government Code section 11380, subdivision (a)(1). As we have previously held, the late charge is not included in the "selling price" provided by the contract and we do not think it can seriously be urged that defendant, in determining to impose a late charge, was establishing a rate, price or tariff for which one could purchase the right to make an untimely payment.

Plaintiff contends that requiring him to advance some of the expenses of notice to the class has a chilling effect upon a person such as one who desires to bring an action against a state agency and thus it violates his constitutional right to petition for redress of grievances. This constitutional right encompasses access to the courts as well as to other branches of government. (*California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510 [30 L.Ed.2d 642, 646, 92 S.Ct. 609].) Meaningful precedent applicable to plaintiff's contention is hard to find. This constitutional provision is not frequently the subject of litigation and, when it is, judicial discussion of the concept is often interwoven with comments as to rights of freedom of expression and association or the right to run for public office. We have not been cited, nor has our research uncovered, any case in which the payment of a fee or charge in connection with bringing a legal action against a governmental unit has been discussed in the context of the First Amendment right to petition for redress of grievances. Yet we know that filing fees are customarily required of those able to pay them in order to bring an action against the government.

The cases perhaps most nearly in point deal with filing fees and other requirements to run for public office. The principle involved is illustrated by two cases decided by the United States Supreme Court in 1974. In *Lubin v. Panish* (1974) 415 U.S. 709 [39 L.Ed.2d 702, 94 S.Ct. 1315], a petitioner who had declared under oath that he was with-

out assets or income, was successful in establishing that a California statute requiring him to pay a $701.60 filing fee to run for county supervisor, and which did not provide any alternative means of access to the ballot, "deprived him, as an indigent person unable to pay the fee, and others similarly situated, of the equal protection guaranteed by the Fourteenth Amendment and rights of expression and association guaranteed by the First Amendment." (*Id.*, at p. 710 [39 L.Ed.2d at p. 705].) In contrast, the petitioners (minority political parties) were unsuccessful in *American Party of Texas* v. *White* (1974) 415 U.S. 767 [39 L.Ed.2d 744, 94 S.Ct. 1296]. A Texas statute required parties whose gubernatorial candidate polled less than 2 percent of the vote at the last general election to hold precinct nominating conventions, and if they did not evidence the required support, circulate petitions for signature in order to qualify for the ballot, whereas parties more successful in the previous election could qualify their candidates by less onerous means. The court said at pages 793-794 [39 L.Ed.2d at page 767]: "They must undergo expense, to be sure, in holding their conventions and accumulating the necessary signatures to qualify for the ballot.... We are unconvinced, at least based upon the facts presently available, that this...law is an 'exclusionary mechanism' which 'tends to deny some voters the opportunity to vote for a candidate of their choosing' or that it has 'a real and appreciable impact on the exercise of the franchise.' [Citation.]"

In the instant case, notice to the members of the class is necessary. (See *Home Sav. & Loan Assn.* v. *Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal.Rptr. 511].) Apart from the constitutional argument here made, it was proper for the court to order either party to give the notice. (*Civil Service Employees Ins. Co.* v. *Superior Court* (1978) 22 Cal.3d 362, 366 [149 Cal.Rptr. 360, 584 P.2d 497].) Unlike the petitioner in *Lubin*, the present plaintiff was not unable to advance the expense but instead declared himself through counsel as being able and ready to do so if required by the court. *Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128 [161 Cal.Rptr. 532], cited by plaintiff, adds no strength to his argument. That case merely held that the constitutional right to petition for redress of grievances precluded one from being held liable for protesting to a governmental agency the transfer of a liquor license.

█ Plaintiff in the case at bench was not denied access to the courts. As it developed, he deposited the necessary funds and proceeded to trial. If he and other members of the class had not desired to advance the

expenses of the required notice, they could have nonetheless proceeded with individual actions to assert the rights for which they contended. To paraphrase the Supreme Court in *American Party of Texas v. White, supra*, we are unconvinced that the court's order requiring plaintiff to pay, subject to reimbursement out of the fund recovered, if he is successful, some of the expenses of notice to the class tends to deny him or the members of the class access to the courts or that such an order has a real and appreciable impact on such right of access. The trial court correctly rejected this argument.

Since, however, the trial court incorrectly determined that the contract in question authorized the collection of late charges, the judgment is reversed and remanded for further proceedings not inconsistent with this opinion; appellant to recover his costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

Petitions for a rehearing were denied September 25, 1980, and respondent's petition for a hearing by the Supreme Court was denied November 12, 1980. Bird, C. J., did not participate therein.