THREE–O–THREE INVESTMENTS, INC., Plaintiff-Respondent,

v.

Gene R. MOFFITT, John S. Evans, James H. Block, Allen J. Block, d/b/a Summit Development Co., Defendants-Appellants.

No. WD 31404.

Missouri Court of Appeals, Western District.

Aug. 25, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 6, 1981.

David R. Frensley, R. Stephen Parris, Ryder, Rose & Frensley, Kansas City, for defendants-appellants.

William C. Partin, Matt Partin, Kansas City, for plaintiff-respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Chief Judge.

A decree in favor of the buyer for specific performance of a real estate contract is the subject of an appeal by the seller.

Initially, cognizance is taken that the decree in this court tried case will not be disturbed on appeal "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accord: *Zoellner v. Carty*, 585 S.W.2d 289, 291 (Mo.App.1979).

The points on appeal, reduced to essentials are as follows: (1) the provision in the real estate contract providing for grant of an easement by the seller to the buyer was nothing more than an "agreement to agree" and was too indefinite and uncertain to support specific performance; (2) the trial court prejudicially erred in permitting the buyer to amend its petition at the close of all the evidence and plead waiver of timely compliance with the closing date set forth in the real estate contract; and (3) the trial court erred in holding that the seller had waived timely compliance with the closing date set forth in the real estate contract.

Certain basic facts need to be set forth in order to put the above points in perspective. On June 30, 1977, Gene Moffitt, John S. Evans, James H. Block, Allen J. Block, a

general partnership doing business as Summit Development Company (Seller), and Three-O-Three Investments, Inc., a corporation (Buyer), executed a real estate contract for purchase of a fee tract and an easement situate in a shopping center under development by seller at the intersection of M–291 and Third Street, Lee's Summit, Missouri. The buyer intended to use the fee tract and easement for the purpose of establishing a commercial car washing business.

The contract, prepared by seller, consisted of certain insertions, additions and deletions to a printed "standard form" captioned "Missouri Real Estate Contract." The total purchase price was $26,500.00 and the terms of payment were spelled out. Exhibit "A", attached to the contract and made a part thereof by reference, was an "architectural" drawing of the shopping center site, to scale, from which the legal descriptions of both the fee tract and the easement could be ascertained.

Regarding the easement, the contract contained the following provision: "Seller and Buyer agree to execute and record a mutually acceptable COMMON AREA EASEMENT AGREEMENT covering a portion of Tract 4 as shown on Exhibit 'A' attached hereto and made a part hereof at the closing of this transaction." The contract provided that time was "of the essence" and provided for a closing date of "on or before March 1, 1978." The contract was not closed on March 1, 1978, as stipulated. However, an abundance of evidence, consisting of both oral and written statements by the seller to the buyer showing seller's waiver of the March 1, 1978, closing date, went in without objection. Although buyer formally alleged in its petition that there had been an extension of the March 1, 1978, closing date, it sought and received leave of court at the close of all the evidence to amend its petition and plead that seller had waived the March 1, 1978, closing date.

■ Seller's first point purports to rest on several general principles of law peculiar to specific performance. The seller leans heavily upon the well established principle that "in order to justify specific performance, a contract must not be indefinite, uncertain or incomplete, for the Court will not make a contract for the parties." *Biggs v. Moll*, 463 S.W.2d 881, 887 (Mo.1971). In the same general vein, "a contract to be specifically enforceable must be complete in its essential and material terms, and capable of being enforced without adding to its terms." *Ray v. Wooster*, 270 S.W.2d 743, 751 (Mo.1954). The "essential terms" of a contract for the sale of real property are: "(1) the parties; (2) the subject matter; (3) the promises upon both sides; (4) the price; and (5) the consideration." Id. at 752.

Seller's recitation of such principles does not ipso facto resolve its first point. Doing so merely provides a legal template to assist in gauging the evidence and certain definitive legal principles upon which resolution of seller's first point rests.

■ Seller puts great stock in that portion of the easement provision which recites that seller and buyer "agree to execute and record a mutually acceptable COMMON AREA EASEMENT AGREEMENT." This language is seized upon by seller out of context and characterized as nothing more than an "agreement to agree". The fact that subsequent execution of a "COMMON AREA EASEMENT AGREEMENT" was contemplated, standing alone, did not reduce the written contract to the bare stature of an "agreement to agree" if the "essential terms" of the easement agreement are found in the written contract. See: *New York P. E., etc., Co. v. New York P. Exch.*, 208 App.Div. 421, 203 N.Y.S. 648, 652–53 (1924); and *Schlageter Estate Co. v. Koontz*, 97 Cal.App.2d 814, 218 P.2d 814, 817 (1950). Seller would exclude Exhibit "A", attached to and made a part of the contract, as an additional source to look to for the "essential" terms of the easement agreement. It is well established that matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba. *Welch v. North Hills Bank*, 442 S.W.2d 98, 101 (Mo.App.1969).

■ Regarding the easement, the contract is principally faulted by the seller as being indefinite and uncertain in six respects: (1) it contained no legal description of the easement; (2) it failed to delineate whether an easement appurtenant or an easement in gross was contemplated; (3) it was silent as to its duration; (4) it was silent as to who had the duty of maintenance; (5) it lacked specificity as to the "extent of use"; and (6) it failed to spell out whether an exclusive or nonexclusive easement was contemplated.

A look at Exhibit "A" in conjunction with the easement provision contained in the body of the contract effectively dispels seller's contention that the easement provision was too indefinite and uncertain to support specific performance.

Seller's contention that the real estate contract failed to contain a legal description of the easement is untenable. Exhibit "A" and the contractual provision viewed together provided an adequate source from which the legal description of the easement could be ascertained. *Herzog v. Ross*, 355 Mo. 406, 196 S.W.2d 268, 270 (banc 1946).

■ Seller's claim that it is unclear whether an easement appurtenant or an easement in gross was intended is equally untenable. In this state, an easement is never presumed to be a mere personal right when it can fairly be construed to be appurtenant to another estate. *Engelhardt v. Gravens*, 281 S.W. 715, 718 (Mo.1926). Two of the principal legal attributes of an easement appurtenant for right of way purposes are the existence of both a dominant and servient tenement and that one terminus of the right of way "must lie on the land to which it is claimed to be appurtenant." *Downey v. Sklebar*, 261 S.W. 697, 698 (Mo.App.1924). Even a perfunctory look at Exhibit "A" clearly discloses that the fee tract which seller contracted to sell to buyer for a car wash site constituted the dominant tenement and contiguous proper-

ty retained by seller to be burdened by the easement constituted the servient tenement. Moreover, Exhibit "A" discloses with equal clarity that the easement provided for under the contract (1) terminated at one end on the fee tract which seller contracted to sell to buyer, (2) ran across contiguous property retained by seller, and (3) terminated on the other end at a general right of way coursing through the shopping center. The existence of a dominant tenement resolves any doubt as to whether an easement appurtenant or an easement in gross was intended, as an easement in gross has no dominant tenement. See *Wooldridge v. Smith*, 243 Mo. 190, 147 S.W. 1019, 1023 (1912).

■ Seller also insists that the contractual provision regarding the easement was silent as to its duration, thereby excluding enforcement of the contract by way of specific performance. This does not render the contract fatally infirm for a number of reasons. Having concluded that the real estate contract provided for conveyance of an easement appurtenant, an analysis of certain characteristics of easements appurtenant is in order. One of the chief characteristics of an easement appurtenant is that it runs with the dominant tenement, *Downey v. Sklebar, supra*, 261 S.W. at 698, and passes with the conveyance of the dominant tenement although not specifically mentioned in the instrument of conveyance, *Beldner v. General Electric Company*, 451 S.W.2d 65, 75 (Mo.1970). Words of limitation such as "heirs" or "assigns" of the grantee are not required to create an easement appurtenant. *Brown v. Redfern*, 541 S.W.2d 725, 729–30 (Mo.App.1976). The court in *Brown*, citing Section 442.460, RSMo 1969,[1] interchangeably spoke of an easement created by reservation in a deed as "perpetual" and an "appurtenant easement", notwithstanding the absence of any words of limitation such as "heirs" or "assigns". In at least two other jurisdictions

1. [Now Section 442.460, RSMo 1978] "The term 'heirs', or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant."

having statutes comparable or substantially similar to Section 442.460, *supra*, grants of existing easements have been construed as perpetual easements even though the creating instruments did not contain words of inheritance or such words as "forever", "permanent", "perpetual" or the like. *Presbyterian Church of Osceola v. Harken*, 177 Iowa 195, 158 N.W. 692 (1916); and *Whitney v. Richardson*, 13 N.Y.S. 861 (1891). In view of the foregoing, the trial court could, and obviously did, reasonably conclude that the parties bargained for a "perpetual" easement, especially in light of the fact that duration of the easement was not expressly limited.

The fact that the easement clause in the contract was silent as to where the obligation of repair and maintenance fell did not render it too indefinite and uncertain to be specifically enforced. As held in *Kohlleppel v. Owens*, 613 S.W.2d 168, 175–76 (Mo.App. 1981), "[a]bsent an agreement to the contrary, the law imposes a duty upon the owner of a dominant estate to maintain and repair an easement appurtenant."

■ Although the contract did not definitively spell out the extent and nature of use of the easement bargained for, failure to do so did not indelibly stamp the contract with such indefiniteness and uncertainty as to preclude specific performance. The provision in the body of the contract regarding the easement together with Exhibit "A" leaves no doubt that the easement bargained for by the parties was a general right of way easement to accommodate use of the fee tract without limitation as to use. Missouri follows the rule that an easement without limitation as to use, as here, " 'may be used for any purpose to which the land accommodated by the way may naturally and reasonably be devoted'." *Kelly v. Schmelz*, 439 S.W.2d 211, 213 (Mo.App. 1969).

Seller also contends that the contract was not susceptible to specific performance because it gave no hint as to whether an exclusive or nonexclusive easement was contemplated by the parties. The language "COMMON AREA EASEMENT AGREE-MENT" clearly refutes this contention. The trial court quite properly interpreted the language just mentioned as providing for a nonexclusive easement. This interpretation of the contract is buttressed by *Campbell v. Kuhlmann*, 39 Mo.App. 628 (1890), which held that grant of an easement of right of way which was not exclusive in its terms and which could reasonably be enjoyed without being exclusive, conveyed a nonexclusive easement.

■ Seller's second point faults the trial court for permitting buyer to amend its petition at the close of all the evidence and plead waiver of strict compliance with the March 1, 1978, closing date contained in the contract. As previously noted, buyer initially pleaded that there had been an extension of the March 1, 1978, closing date. Suffice it to say, buyer did not tender performance on or before March 1, 1978, and the evidence failed to support several elements generally required under buyer's formally pleaded theory. For instance, there was no evidence of consideration to support the alleged extension. *R-Way Furniture Company v. Powers Interiors, Inc.*, 456 S.W.2d 632, 637 (Mo.App.1970), or any writing evidencing an agreement to extend the time of performance, *Dennis v. Woolsey*, 217 Mo.App. 567, 272 S.W. 1014, 1015 (1925). On the other hand a plethora of evidence was introduced, without objection, in part from buyer and in part from seller, from which the trial court could find that seller had waived compliance with the March 1, 1978, closing date. Failure to perform within the time specified in a contract for the sale of an interest in land does not defeat a buyer's right to specific performance if timely performance has been waived by the seller. *Rogers v. Gruber*, 351 Mo. 1033, 174 S.W.2d 830, 831 (1943). Tangentially, waiver of timely performance under a contract for the sale of an interest in land does not have to be in writing. *Cantrell v. Robards*, 210 Mo.App. 688, 238 S.W. 831, 832 (1922).

■ From a strict procedural viewpoint, seller's second point lends itself to being disposed of on the basis of several salient

provisions of Rule 55.33. Paragraph (b) of Rule 55.33 reads as follows: *"Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." Pleadingwise, trial of the issue of waiver was justified on one or both of two grounds. The issue of waiver may be said to have been tried by the implied consent of the parties as probative oral testimony relevant thereto was introduced by the various parties without objection. Concomitantly, consideration of the issue of waiver as a decisional basis for granting specific performance of the contract conformed to the evidence. Even if seller had objected to such testimony, Rule 55.33(b) vests a trial court with broad latitude in granting a party leave to amend his pleading after the time to do so without leave of court has expired and written consent of the adverse party has not been obtained. Paragraph (a) of Rule 55.33 provides, in part, that leave to amend should be "freely given when justice so requires". As held in *Clayton Brokerage Co. of St. Louis v. Lowrance,* 592 S.W.2d 218, 225 (Mo.App.1979), "[t]he grant or denial of leave to a party to amend his pleading 'when justice so requires' uniquely rests within the sound discretion of the trial court and will not be disturbed on appeal unless it be shown that

the trial court 'palpably and obviously abused' its discretion in doing so." In the instant case, seller's belated cry of prejudice has a hollow ring as seller failed to ask for a continuance, presentation of the merits of the action would have been subverted rather than subserved if leave had not been granted to amend, and evidence of waiver was introduced without objection. See Rule 55.33(b). In conclusion, the trial court was vindicated in granting buyer leave to amend its petition and formally plead waiver on either the ground that doing so was in conformity with the evidence or that "justice" required the granting of leave to do so.

Seller's final point focuses on certain evidence which it argues constituted an irrefutable disclaimer of waiver. The evidence referred to consisted of an oral statement by one of seller's principals on May 30, 1978, to one of buyer's principals that the "deal was off" and a letter dated May 31, 1978, from seller to buyer advising that seller "does declare the contract inoperative and will retain the money deposited on the contract as liquidated damages". Evidence was introduced from which the trial court could find that shortly before May 30–31, 1978, seller continued to waive the March 1, 1978, closing date stipulated in the contract. Where the specified time for performance under a contract is waived, and no other time is fixed, the law implies a reasonable time. *Ward v. Haren,* 139 Mo. App. 8, 119 S.W. 446, 448 (1909). What constitutes a reasonable time depends upon the circumstances of each case. See: *Magee v. Mercantile-Commerce Bank & Trust Co.,* 343 Mo. 1022, 124 S.W.2d 1121, 1124 (1939). In the instant case a multitude of delays were encountered largely due to the relatively infant stage of development of the shopping center complex where the fee tract and proposed easement were situate. Perforce, the trial court did not err in finding that buyer's delay in performance, temporally speaking, was not unreasonable. The conclusive effect attributed by seller to its May 30, 1978, oral statement and May 31, 1978, letter as irrefutable disclaimers of

waiver of performance by buyer, thereby precluding buyer's right to specific performance, is rejected. In *Bogad v. Wachter*, 365 Mo. 426, 283 S.W.2d 609, 614 (1955), the court subscribed to the principle that " 'if time is of the essence but has been waived it is necessary that the vendor give the vendee notice of his intention to forfeit the contract before the vendee may be deprived of equitable relief against the forfeiture.' " The law demands "reasonable" notice from the vendor (seller). Id. at 616. The trial court could properly conclude that seller failed to give buyer "reasonable" notice and that specific performance was still a viable remedy.

Tested in terms of *Murphy v. Carron*, *supra*, the decree for specific performance rendered in favor of buyer and against seller is affirmed.

Judgment affirmed.

All concur.